No. 34,518

THE STATE OF KANSAS, *Appellee*, v. RAYMOND PHELPS, *Appellant.*

(97 P. 2d 1105)

Opinion filed January 27, 1940.

*Edward T. Riling, John J. Riling,* both of Lawrence, and *John W. McElroy,* of Topeka, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, and *Milton P. Beach,* county attorney, for the appellee.

The opinion of the court was delivered by

HOCH, J.: The defendant was convicted on two counts of manslaughter in the fourth degree, and sentenced on both counts, the

sentences to run concurrently. He appeals to this court, assigning errors which will be hereinafter discussed.

Raymond Phelps, the defendant, a resident of Wisconsin, had formerly lived in Topeka, Kan., and had been visiting for several days with his father in Topeka. On the evening of March 7, 1939, he was driving his father's automobile and had with him five passengers. A young woman was in the front seat with him and two couples were in the back seat. They were on a pleasure ride, having left Topeka sometime after eight o'clock in the evening. As they were proceeding eastward about two miles east of Lawrence, Kan., Phelps came up behind another car which was traveling eastward, attempted to pass it, and in doing so his car collided head-on with a car coming from the east. Mr. and Mrs. Bernard Brown, the two occupants of the westbound car, were killed. There is no dispute that the Phelps car was on the wrong side of the road when the collision occurred.

The information contained two counts, the first one based on the death of Mrs. Brown and the second on the death of Mr. Brown. In each count it was charged, in substance, that the defendant was driving unlawfully and with culpable negligence and in such a reckless manner as to indicate a wanton disregard for the safety of others, and at such a rate of speed as to endanger the lives of others, and by so operating the car caused the death of Mr. and Mrs. Brown.

For purposes of this review we need make only brief reference to the testimony. The accident took place about eleven o'clock p. m. The pavement was dry. The Phelps car was going down a slight grade to the east and was approaching a car which was traveling at about 45 or 50 miles an hour, according to the testimony of Hamilton, the driver. As the Phelps car turned out to the left to pass the Hamilton car the Brown car suddenly appeared and the collision occurred. Phelps explained his failure to see the approaching car by the fact that several hundred feet to the east there was a dip in the pavement and that the Brown car came suddenly out of the dip. He also testified that just after seeing the lights of the approaching car it appeared that the other car was wavering. He applied his brakes, and the evidence disclosed that there were skid marks made by his car for a distance of approximately 80 to 90 feet which continued almost, if not entirely, to the point where the collision occurred. There was no testimony that skid marks were

made by the Brown car. Hamilton testified that he had observed a car coming from the east when it was four or five hundred feet away, that he did not know how fast it was traveling, that nothing about its operation attracted his attention, that it was traveling on the right or north side of the pavement and did not go over on his side, that he did not see the Phelps car coming from the west until almost simultaneously with the accident which took place about 25 feet back of his car, that he heard the screeching of the brakes immediately before the accident, that he heard the screech of the brakes about the same time that the lights illuminated the interior of his car. A passenger in the Hamilton car gave substantially the same testimony. One of the passengers in the Phelps car who was riding in the back seat said that when they reached the top of the grade just before proceeding down the slope to the east she saw the headlights of a car coming toward them and then she noticed the lights disappeared, but she did not realize that Phelps had pulled over to the left side of the road in order to pass the car in front of him, that she did not know just how far away the lights from the approaching car were, but that "there was some little time intervened" and that "there were a few seconds" between the time she first saw the lights of the approaching car and when the crash took place. The young woman who was riding in the front seat with Phelps testified that just before the accident she had been leaning over operating the radio in the car, that while doing this she looked up and saw a car coming from the east, that she had not seen any car coming over the hill beyond the dip and when she first saw the lights of the approaching car they were about 200 feet from it, that "it might have been more or it might have been less," that after she noticed the lights Phelps put on the brakes, the car coming from the east swayed a little, but continued coming in their direction.

One assignment of error is that the court erred in not instructing the jury that since the death of Mr. and Mrs. Brown occurred in the same accident, the defendant could not be found guilty of the two offenses and that the court erred in sentencing him upon two counts. It appears, however, that no objection was made at the time to the instructions under which the defendant could be found guilty on two counts; and that although the defendant was found guilty on both counts, sentences were imposed to run concurrently. In view of these facts and of the conclusions reached herein on other matters, we do not now pass upon this question.

Another assignment of error is that the verdict was improperly changed after it was returned. The facts on this matter are shown by the following comment by the court prior to overruling the motion for a new trial:

"The jury came into the courtroom. The court asked the jury whether it had arrived at a verdict and was advised that it had. The court looked at the verdict and handed the verdict to the clerk. The clerk read the jury found the defendant guilty on the second count. The court had seen the verdict before and it appeared to him at the time the wording of the verdict was the defendant was guilty on two counts. The court remarked he didn't read the verdict in that way. The verdict was returned to the jury, to the foreman, and the foreman changed the figure '2' to 'first and second,' as I recollect it now. The court then handed the verdict to the clerk again, who read it, and it was to the effect that the jury found the defendant guilty as charged in the first and second counts. The jury was inquired of as to whether or not that was its verdict and there was not a negative response. In other words, all the jurors responded to the effect it was their verdict."

A similar question was passed upon by this court in the case of *State v. Cary,* 124 Kan. 219, 257 Pac. 719. In that case the jury returned a verdict of guilty on "one" count. In open court the judge inquired of the jury what it meant by the verdict and was informed that it meant the "first count." Thereupon the court had the foreman, in the presence of the jury, change the verdict from "one" count to "first count." As in the instant case, the verdict was then passed to the clerk and read, after which the court inquired of each juror if the verdict as read was the verdict of the jury and received an affirmative answer from all jurors. It was held that the objection to the change in the form of the verdict was highly technical and without merit.

In the case of *State v. Wade,* 56 Kan. 75, 42 Pac. 353, the jury returned a verdict which read, "We, the jury———the defendant guilty as charged in the information." This court held that it was not error to overrule a motion for new trial based upon the ground that the verdict did not contain the verb "find." In the instant case the change of the verdict to read "first and second counts" instead of "2 counts" was not a change of substance and was in no way prejudicial to the defendant.

Appellant further contends that the court erred in failing to instruct the jury on the question of "negligent homicide." G. S. 1937 Supp. 8-529, which was section 29, chapter 283, Laws of 1937, as amended by section 1, chapter 59, Laws of 1938, reads as follows:

"(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide. (b) Any person convicted of negligent homicide shall be punished by imprisonment for not more than one year or by a fine of not less than $100 nor more than $500, or by both such fine and imprisonment. (c) The commissioner shall revoke the operator's or chauffeur's license of any person convicted of negligent homicide."

G. S. 1935, 62-1447, provides:

"The judge must charge the jury in writing and the charge shall be filed among the papers of the cause. In charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict. . . ."

After instructing the jury on the question of manslaughter the court gave the following instruction:

"If you do not find the defendant guilty of manslaughter you will next inquire whether or not he is guilty of a violation of section 8-531, R. S., which is a lower degree of the principal crime charged and which provides in substance that any person who drives an automobile in such a manner as to indicate either a willful or wanton disregard for the safety of persons shall be deemed guilty of reckless driving."

Section 8-531, to which the court referred in that instruction, was section 31 of the same chapter 283, Laws of 1937, of which section 8-529, defining negligent homicide, was a part.

Had a specific request been made for an instruction on negligent homicide the failure to give such an instruction would undoubtedly have been error under the statutes and the decisions of this court. The question here presented is whether the court erred in failing to instruct with reference to negligent homicide in the absence of specific request to do so. It is not easy, and perhaps it is impossible to entirely harmonize the decisions upon this question. In the case of *State v. Winters*, 81 Kan. 414, 105 Pac. 516, which is one of the principal cases relied upon by the appellee, the court discussed the statute which requires the court to inform the jury as to all matters of law necessary for their information (G. S. 1935, 62-1447, *supra*), and stated that early in the history of the state it was held that the statute was imperative and should be obeyed without request, citing *Craft v. State*, 3 Kan. 450, and *State v. Grubb*, 55 Kan. 678, 41 Pac. 951, as illustrative of the peremptory character of the statute. Further discussing, however, the trend of subsequent decisions, the court said: "Very soon, however, it became apparent that a reversal ought

not to follow every failure to obey the statute," and a number of cases were cited wherein it was held that no error was committed in failing to instruct with reference to offenses inferior to the one charged or of which the defendant had been convicted. It may be noted that many of these cases were prior to *State v. Grubbs,* supra, to which reference had just been made in the opinion. In *State v. Grubbs,* wherein the defendant was charged with the crime of rape and there was a question whether under the evidence the completed crime had been committed, the court held that the trial court erred in failing to instruct the jury as to the law with reference to an *attempt* to commit the crime even though the defendant had not asked such instruction.

The opinion in *State v. Winters,* supra, continued:

"From all the decisions noted it may be concluded that the statute means what is says and should be followed, but that a duty rests on counsel for the defendant to aid and not to ambush the court, and consequently instructions should be requested covering all lesser degrees or lesser crimes involved in the main charge which the defendant desires to be considered. A request sufficient to direct the mind of the court to the subject is enough. Good instructions need not be offered, or a good theory for them formulated; *and the evidence itself may point so plainly to the necessity for such instructions that no request is necessary.* Generally, however, a failure to make the request waives error in failing to instruct, and, generally, error in failing to instruct or in giving wrong instructions upon lesser degrees or offenses works no prejudice when the defendant is convicted upon satisfying evidence of a higher charge, under correct instructions relating to it. Should it appear that if omitted instructions duly requested or *clearly required by the evidence* had been given the jury might naturally and probably have convicted of a lesser degree or offense, the omission will constitute prejudicial error." (p. 421.) (Italics ours.)

The situation presented in *State v. Winters,* supra, was particularly strong against the defendant because he had not only failed to request an instruction on the lesser offense but had affirmatively objected to the giving of such an instruction.

The appellee invokes the rule announced in *State v. Bell,* 121 Kan. 866, 250 Pac. 281, and adhered to and followed in numerous cases to the effect that errors made by the trial court without objection or without being clearly raised and presented on the motion for new trial are unavailing on appeal. Many of the cases cited deal with that broad general rule. Along with that well-established rule, however, must also be considered the rule in homicide cases, repeatedly declared, that the court should instruct the jury not only on the evi-

dence adduced by the prosecution in support of the higher offenses but also upon the whole evidence and especially upon the lower degrees of the offense if there is substantial evidence applicable to the lower degrees. The general rule is stated in 30 C. J. 396, as follows:

". . . it is proper and the duty of the court upon a trial for homicide, when charging the jury, to state and explain fully the law defining the crime for which defendant is being prosecuted, and every degree or grade of homicide of which he may be convicted under the indictment and the evidence, *whether such an instruction is requested or not* . . ." (Italics ours.)

The rule was commented upon in *State v. Cunningham*, 120 Kan. 430, 243 Pac. 1066, and it was there recognized that in some cases where the evidence was such that the court might have presented the law of the lower degrees without error, but had omitted to do so, and the accused had not requested such an instruction, the omission would not be material error. One of these cases is *State v. Cary*, 124 Kan. 219, 257 Pac. 719, where the question involved was failure to instruct concerning the defendant's presumption of innocence and as to the burden of proof. Cited therein in support of the holding was *State v. Clough*, 70 Kan. 510, 79 Pac. 117. In *State v. Clough* the information charged the crime of robbery in the first degree. It was held that it was not error for the trial court to omit to instruct the jury as to the lower degrees of crime included in the charge "when the evidence tends to establish the highest degree of crime charged *and does not tend to establish guilt of any lower degree of crime included therein.*" (Italics ours.) In that case there was complete lack of evidence to sustain a verdict of guilty of any crime included in the charge other than robbery in the first degree. It was stated in the opinion that had the jury returned a verdict of guilty of such lesser offenses "it would not have been sustained by the evidence and should have been set aside on motion."

The latest case in which this court dealt with this question was *State v. Gloyd*, 148 Kan. 706, 84 P. 2d 966. The defendant was there charged with manslaughter in the first degree and was convicted of manslaughter in the fourth degree. The facts in the case were strikingly similar to those in the instant case. The defendant, driving at a high rate of speed, attempted to pass another car and in doing so collided with a third car, forcing it off the highway and fatally injuring one of its occupants. No instruction was asked or given with reference to the offense of negligent homicide. The omission of such instruction was held to be reversible error. Counsel for

appellee distinguishes *State v. Gloyd* on the ground that in that case the uniform act regulating traffic, of which the section dealing with negligent homicide is a part, was called to the attention of the trial court on a motion to quash the information. In that motion the defendant contended that the act was unconstitutional. The act contains many sections, including 8-529 and 8-531, here involved, and the record in *State v. Gloyd* does not disclose that specific attention of the trial court was called to the section on negligent homicide. In the instant case, as in *State v. Gloyd,* no instructions were requested on negligent homicide. In both cases, however, it is apparent from the record that the uniform traffic act which contains the section on negligent homicide was within the attention of the court. In the instant case, although not requested to do so, the court specifically instructed with reference to the offense of reckless driving as defined in section 8-531. Just why the court should instruct on the offense of reckless driving, defined in 8-531, and fail to instruct on negligent homicide defined in 8-529 is not apparent. The substance of the charge against the defendant was that by his unlawful operation of the automobile he had caused the death of two persons. If the evidence called for instruction on reckless driving under 8-531, certainly it called for instruction on negligent homicide under 8-529. The penalty provided for manslaughter in the fourth degree is a term of not less than six months nor more than two years. The penalty on first offense for reckless driving is imprisonment for not less than five days nor more than ninety days or by a fine of not less than $25 nor more than $500, or by both such fine and imprisonment. The penalty for negligent homicide is imprisonment for not more than one year or by a fine of not less than $100 nor more than $500 or both such fine and imprisonment. Under the instructions the jury was given only two alternatives—the penalty provided for manslaughter in the fourth degree or for reckless driving. The evidence in this case made the statute defining negligent homicide clearly applicable. Upon the facts disclosed by the record, including the fact that the court evidently had before it, when giving its instructions, the uniform traffic statute which includes both sections, 8-529 and 8-531, we are impelled to the conclusion, following *State v. Gloyd,* supra, that the defendant was entitled to an instruction on the subject of negligent homicide even though such instruction was not requested. That conclusion is further fortified in the instant case by some uncertainty as to whether the trial

court did in fact approve the verdict. In commenting on the case in connection with the motion for new trial the court said, among other things:

"The state claims that this defendant was culpably negligent in the manner that he operated his automobile when he attempted to pass another automobile on the highway. The evidence along that line I think as produced by the state was that he came up behind another car, both of them going at a fairly good rate of speed. He met a car coming from the other direction and that it was due to the manner in which he operated his car that caused that collision. The defendant doesn't question the fact but what there was a collision and that collision resulted in the death of the people in the other car. He says, however, that the road was constructed at the place in question in such a manner he didn't have a clear view of the road to the east and that he was not familiar with the road; that on his attempting to pass the car going in the same direction he was, he went to the left-hand (north side) of the road; that suddenly there loomed before him the lights of another car coming against him; that when he discovered that kind of a situation he clamped on the brakes and did everything he could to avert the accident which resulted in the tragedy. He says, also, that the car coming from the east was rather uncertain in its movements and he thought at first that sometime during the interval the car was traveling on the south or its left-hand side of the road. Now those are the facts presented to the jury. Of course, they could be amplified, I know, but those are the facts upon which the jury passed in the case. The jury arrived at the conclusion that the defendant was culpably negligent in the manner he operated his car on the day and date in question. . . .

"I expect a lot of other people have done the same thing this man has done. There just wasn't any other car coming from the other direction and they were successful in passing the car in front of them. The fact that a person may not be familiar with the road requires more caution on their part. They are bound to operate their cars on the highways of this state with knowledge of the fact other people may be using the highways at the same time, which they have a right to do. . . .

"I am perfectly aware this is not tried entirely upon the question of negligence. A person might be negligent and still not be guilty of any crime. The mere fact he may be negligent does not justify the court in adjudging him guilty of a crime, yet where the statutes define the crime, sets out what its elements are and then the court is aided by judicial decisions, I cannot say that the verdict returned by the jury is out of line with the correct solution of the situation as developed by the facts as to warrant the court in setting aside the verdict. The fact that the judge may not agree with the solution given to the problem by the jury does not warrant the court in setting aside the verdict. If the court figures that the verdict is of such a character it cannot in good conscience approve it, then it becomes the duty of the court to act. I do not want to be understood by that to say that I disagree with the jury in connection with the solution of this case. I express no opinion in that way at all. The case was submitted to the jury and was there, I believe, under proper instructions."

The trial court has a duty to exercise a judicial judgment as to the justice of a verdict of guilty in a criminal case—a duty of approving or disapproving the verdict. (*State v. Wilson,* 128 Kan. 756, 280 Pac. 769.) We do not say that the trial court did not approve the verdict. But the comment by the court tends to emphasize the necessity that existed for full instructions as to the lesser offenses of which the defendant might be found guilty under the information and the evidence adduced.

The conclusions already stated make unnecessary discussion of other assignments of error.

The judgment is reversed with directions to grant a new trial.