No. 38,450

THE STATE OF KANSAS, *Appellant*, v. ROBERT DEAN GOETZ, *Appellee.*

(237 P. 2d 246)

Opinion filed November 10, 1951.

*Max A. Campbell,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *C. Harold Hughes,* assistant attorney general, were with him on the briefs for the appellant.

No appearance for appellee.

The opinion of the court was delivered by

THIELE, J.: The state appeals from an order of the district court discharging a defendant in a criminal action.

On March 31, 1951, an information was filed in the district court containing five counts charging the defendant with manslaughter in the first degree, with driving a motor vehicle while under the

influence of intoxicating liquor, with reckless driving and with two other misdemeanors. The defendant's motion that he be tried separately on the last two counts was allowed. Later he was arraigned on the first three counts, waived the reading of the information, entered a plea of not guilty and a trial was had. At the close of the state's evidence defendant moved the court that the state elect upon which of the three counts it sought conviction and the state elected to rely upon the first count charging manslaughter in the first degree and dismissed the action as to the second and third counts. The record discloses that the defendant then moved that he be discharged for the reason the evidence produced did not prove the charge, which motion the trial court sustained. The word "demur" or any synonymous word was not used, but a journal entry later filed stated that the defendant "demurred" to the state's evidence and moved for his discharge for the reason the state's evidence did not prove and was not sufficient to constitute the crime charged in count 1 of the information or any inferior crime, and that the court sustained the demurrer and the motion and discharged the defendant, and that the state excepted to the rulings.

Directing attention to *State v. Keenan*, 7 Kan. App. 813, 55 Pac. 102, the state contends that a demurrer is unknown to the criminal practice and the trial court erred in considering it. In the above case the defendant urged that the trial court erred in not sustaining his demurrer to the state's evidence and the court rather abruptly held there was no error as a demurrer was not a proper practice and there was no authority for it in the criminal code. While the journal entry in the instant case does mention a demurrer, it also mentions the motion to discharge. Both were sustained, and error will not be predicated on the fact the demurrer may have been ruled on.

We take up whether the trial court erred in discharging the defendant. If the evidence tended to disclose that the offense charged was committed and that defendant committed it, the question was for the jury to decide even though the evidence was weak. See *The State v. Truskett*, 85 Kan. 804, Syl. ¶ 3, 118 Pac. 1047, and corresponding part of opinion.

In substance, the manslaughter count charged that on October 29, 1950, the defendant willfully, wantonly, feloniously, without design to effect death, and with culpable negligence, drove a pickup truck on a designated highway on the left-hand side of the highway and ran against and struck an automobile occupied by one Christina

Zerr, whereby she was then struck with great violence and received divers mortal wounds, which were caused by the act, procurement and negligence of the defendant while he was "engaged in the perpetration of a misdemeanor not amounting to a felony, contrary to the form of the statutes Section 21-407 G. S." in such case made and provided. If there was any motion to quash the information, or any contention otherwise that it did not state an offense the record as abstracted, including the journal entry, does not disclose it.

The question presented by the motion to discharge was whether the state's evidence proved or tended to prove the acts charged in the information. In this connection we note that appellee has not seen fit to file any counter-abstract or brief to advise us of the reasons asserted by him to procure the trial court's ruling in his favor. In the state's brief reference is made to remarks apparently made by the trial court when hearing argument on the motion to discharge but none of which are set forth in the record as abstracted. Under the circumstances, we shall ignore these remarks and confine our discussion to the record as abstracted.

Insofar as is necessary here, it is noted that by G. S. 1949, 21-407, it is provided that the killing of a human being without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration of any misdemeanor not amounting to a felony, in cases where such killing would be murder at the common law, shall be deemed manslaughter in the first degree. Was the evidence introduced by the state sufficient to support the information charging the above crime? It is unnecessary that we detail at length the evidence of individual witnesses, or recite their testimony. An examination of the record as abstracted discloses that on the day in question one Heier was driving his motor vehicle north on a designated road being followed by the defendant who was driving a pickup truck; that he passed Anton Zerr who was driving a motor vehicle south; that he saw defendant had had a wreck and he turned and went back and Mr. and Mrs. Zerr were still in their car which was headed south. A highway patrolman testified to a conversation with the defendant in which the defendant stated he was traveling north on the highway at a speed between 45 and 50 miles per hour, that he was racing out to the Goetz farm with Heier, that due to the dust he could not see where he was going, that he was on the wrong side of the road, and that the defendant said he didn't remember just exactly what

happened or who or what he had hit. He also testified that he visited the place of the collision and that oil spots and broken glass were on the west side of the road. There was other evidence as to the defendant's vehicle being on the west or left-hand side of the highway and striking the one driven by Zerr. This evidence was sufficient to prove a violation of G. S. 1949, 8-537, regulating driving upon the right side of the highway, and of G. S. 1949, 8-531, pertaining to reckless driving, the violation of the latter being denounced as punishable as provided in the section. There was also some evidence that defendant was operating a motor vehicle while under the influence of intoxicating liquor, an act denounced by G. S. 1949, 8-530, and punishable as therein provided. We note also that under G. S. 1949, 8-503, that it is unlawful, and unless otherwise declared in the act with respect to particular offenses, it is a misdemeanor for any person to do any act forbidden or to fail to perform any act required in the act. Misdemeanors are punishable as provided by G. S. 1949, 8-5,125. See also G. S. 1949, 62-104 and 105, defining felonies and misdemeanors. That driving on the left-hand side of the highway, reckless driving and driving while under the influence of liquor, are misdemeanors needs no further elucidation.

The evidence above referred to was sufficient to prove that defendant was engaged in the perpetration of a misdemeanor as required by G. S. 1949, 21-407.

The next question pertains to the killing. The evidence is that immediately after the two vehicles struck other persons came to the scene. Anton Zerr was severely injured and did not testify at the trial. Other evidence was that immediately after the collision there was a woman in the Zerr automobile who was motionless, and an undertaker testified as to removing the dead body of Mrs. Zerr from the automobile. We think that in the absence of evidence from which a contrary conclusion might be drawn, all of the evidence heretofore detailed was sufficient to establish that (Mrs.) Christina Zerr was killed in the collision of the two motor vehicles.

Under the facts, would the killing have been murder at the common law?

In *Craft v. The State of Kansas*, 3 Kan. 450, 481, where the charge was murder in the first degree, murder at the common law is defined as being:

"Where a person of sound memory and discretion unlawfully kills any reasonable creature in being, and in the peace of the state, with malice prepense or aforethought, either express or implied."

In *The State v. Estep*, 44 Kan. 572, 574, 24 Pac. 986, where the charge was murder in the first degree, the court approved an instruction containing the same definition.

In *The State v. Ireland*, 72 Kan. 265, 83 Pac. 1036, where the charge was assault with a deadly weapon, it was held:

"Neither murder nor manslaughter is defined by the statutes of Kansas. These terms, as used in the crimes act, have the same meaning as at common law. Murder is the unlawful killing of a human being with malice aforethought. Manslaughter is the unlawful killing of a human being without malice." (Syl. § 2.)

In the later case of *The State v. Rumble*, 81 Kan. 16, 105 Pac. 1, 25 L. R. A. (ns) 376, where the charge was murder in the second degree, in discussing whether a person too drunk to commit an offense could be guilty of an offense where intent was necessary, it was said:

"At common law murder may be committed without any actual design to take life (21 Cyc. 712), and therefore drunkenness can be no defense to that charge. (12 Cyc. 174, note 77.) Under some statutes which divide murder into degrees an involuntary homicide may be murder in the second degree. (12 Cyc. 174, note 78.) In *Craft v. The State of Kansas*, 3 Kan. 450, it was inaccurately said that to constitute murder at common law an intention to take life must precede the killing, and that whatever act would have been murder at common law is murder under the Kansas statute, being classified as first or second degree according to whether or not it was done deliberately and with premeditation." (1. c. 21.)

In *The State v. Wimer*, 97 Kan. 353, 356, 155 Pac. 7, a prosecution for murder in the first degree, it was said:

"Malice aforethought has been held to be nothing more than an unlawfwul or wicked intention. (*The State v. White*, 14 Kan. 538; *The State v. Fooks*, 29 Kan. 425.)"

In 40 C. J. S. 860 (Homicide, § 14) it is said that:

"It is difficult to explain clearly what the law means by malice. Generally speaking, it signifies a condition of the mind and heart at the time of the fatal act. Malice is the deliberate intent unlawfully to take away the life of a fellow creature, but it does not of necessity import ill-will toward the individual injured or toward any particular person . . . and malice has been frequently substantially so defined as consisting of the intentional doing of a wrongful act toward another without legal justification or excuse."

We need not discuss further what constitutes malice or malice

aforethought, for giving the words a meaning most favorable to the defendant, they would import a meaning that his act was intended unlawfully to take away the life of another. Such a construction would not be in harmony with the observation of this court in *The State v. Rumble,* supra, where the charge was murder, nor consistent with the statute under which the defendant was charged, the language there used being: "The killing of a human being *without a design to effect death* . . . shall be deemed manslaughter in the first degree." It would seem the very language of the statute would eliminate from "murder at the common law" as that phrase is used, malice as including an intent to kill as a necessary element in proving manslaughter in the first degree. On the other hand, if malice aforethought be defined as nothing more than the intentional doing of a wrongful act toward another, not necessarily against the person injured, then the meaning of the statute becomes clearer. Put another way, if malice as an essential ingredient includes intent to kill, the charge should be murder and not manslaughter.

But even if the proof did not fully sustain the charge of manslaughter in the first degree, but did support a lesser included offense such as manslaughter in the fourth degree (G. S. 1949, 21-420) or negligent homicide (G. S. 1949, 8-529), the defendant should not have been discharged. See G. S. 1949, 62-1023, 1441, 1444, 1447, 1502. The question of sufficiency of instructions as to lesser degrees, or included offenses, also the sufficiency of evidence, in cases where the charge was manslaughter in the fourth degree received attention in *State v. Spohr,* 171 Kan. 129, 230, P. 2d 1013, and in cases therein mentioned, and attention is directed thereto by way of analogy.

In our opinion the trial court erred in discharging the defendant. That order is reversed and the cause is remanded for further proceedings.

SMITH, J. (dissenting): I am unable to concur in the judgment in this case. I look at it this way—The evidence proves the defendant to have been guilty of nothing more than ordinary negligence. I doubt if we should say that where a person is killed as the result of another committing ordinary negligence the killing would have been murder at common law.