No. 38,638

STATE OF KANSAS, *Appellant,* v. GENE LUTHER CHAMP, *Appellee.*

(242 P. 2d 1070)

Opinion filed April 12, 1952.

*Lee Hornbaker,* county attorney, of Junction City, argued the cause, and *Harold R. Fatzer,* attorney general, of Topeka, was with him on the brief for the appellant.

*I. M. Platt,* of Junction City, argued the cause, and *Chas. I. Platt,* of Junction City, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This is an appeal by the state from an order sustaining defendant's motion to quash the second amended information in a criminal case. The information reads:

"I, Lee Hornbaker, the undersigned County Attorney of said county in the name, and by the authority, and on behalf of the State of Kansas, come now here, and give the Court to understand and be informed, that on or about the 29th day of October, A. D. 1950, in said county of Geary and State of Kansas, one Gene Luther Champ did then and there UNLAWFULLY and FELONIOUSLY and with culpable negligence drive and operate a motor vehicle, to wit, a 1950 Ford Truck and attached semitrailer, upon the public highways of the State of Kansas, to wit, U. S. Highway 77, in a careless and reckless manner and in such a manner as to indicate a wilful, wanton and negligent disregard of the safety of other persons on said highway. That said culpable negligence and said wilful, wanton and negligent disregard of the safety of other persons on said highway consisted of driving and continuing to drive said vehicle aforesaid when the said Gene Luther Champ was and knew he was fatigued, sleepy and tired and while continuing to drive in said condition the said Gene Luther Champ fell asleep and allowed the said vehicle to cross the center line of said highway, contrary to the provisions of G. S. 1949, 8-537, and into the path of a vehicle driven by one Clarence Webber whereby the vehicle driven by the said Clarence Webber was then and there struck with great force and violence and the said Clarence Webber as a result thereof received wounds, bruises and contusions which caused his death, the death of the said Clarence Webber being caused by the act, procurement and culpable negligence of the said Gene Luther Champ as aforedescribed.

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Kansas."

Defendant moved to quash the information:

". . . for the reason that it fails to state a crime as defined in the Statutes of Kansas, is too indefinite and uncertain, and does not inform the defendant as to what he is called upon to plead to or defend against."

After a hearing the court found:

". . . that the second amended information as filed herein by the State of Kansas fails to state a crime as defined in the statutes of the State of Kansas," and sustained the motion.

The state, through its attorney, promptly gave notice to the court that it reserved the question and that it intended to appeal, and on the same date served and filed the notice of appeal.

In this court counsel for appellant advise us that the statute under which defendant was charged is G. S. 1949, 21-420. All reference to statutes herein referred to are General Statutes of 1949 unless otherwise noted. The sections of the chapter and article preceding the one here relied upon pertain to murder in the first degree, murder in the second degree and manslaughter in the first, second and third degrees. The statute in question reads:

"Every other killing of a human being, by the act, procurement or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree." (21-420.)

In this case counsel argue at length and cite authorities as to what constitutes manslaughter at the common law. Each side cites and quotes excerpts from the opinion, at times without reference to the context, of *State v. Custer*, 129 Kan. 381, 282 Pac. 1071. The eminent jurist who wrote the opinion in that case made an exhaustive research of what constituted manslaughter at the common law at the time the section here in question was first adopted in this state in 1855 and quoted from many authorities prior to and since that date. The result of all that study was embodied as the controlling rule in this state in the fourth paragraph of the syllabus, which reads:

"If death results from unlawful conduct amounting to misdemeanor denounced by statute for the purpose of protecting human life and safety, and the death would not have resulted except for the unlawful conduct, the killing would be manslaughter at common law."

This same conclusion was reached by this court in *State v. Spohr*, 171 Kan. 129, at page 132, 230 P. 2d 1013. Since the decision in *State v. Custer*, supra, it is no longer an open question in this state as to what constitutes manslaughter at common law.

While there is some superfluous language in the information above quoted, such language does not make the information bad. On that point section 62-1011, so far as here pertinent, reads:

"No indictment or information may be quashed or set aside for any of the following defects: . . .

"*Sixth.* For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged. Nor,

"*Seventh.* For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Guided by our holding in *State v. Custer*, supra, and by the

statute above mentioned we think it cannot be said that the information fails to state a crime as defined in our statutes.

We should note, however, that the pertinent portion of our statute (8-537) reads: "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway," except under circumstances not pertinent here; and this is made a misdemeanor by our statute (8-5,125). Also, our statute (8-529) in part reads:

"When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide," providing the penalty.

Also, our statute (8-531) defines and prescribes a penalty for reckless driving. Our cases have consistently held that where one is prosecuted for manslaughter in the fourth degree under 21-420 the evidence may be such that the court is required to give an instruction upon negligent homicide under 8-529, or on reckless driving under 8-531. *State v. Gloyd,* 148 Kan. 706, syl. 4, 84 P. 2d 966; *State v. Phelps,* 151 Kan. 199, 206, 97 P. 2d 1105 (see same case on second appeal, 153 Kan. 337, 110 P. 2d 755; *State v. Goetz,* 171 Kan. 703, 706, 237 P. 2d 246.

We think there is nothing seriously wrong with this information and that, depending upon the evidence, the jury would be warranted in returning a verdict against the defendant of fourth-degree manslaughter under 21-420, or negligent homicide under 8-529, or reckless driving under 8-531.

Counsel for appellee make much of the allegation in the information of the defendant driving, and continuing to drive, his vehicle when he knew he was fatigued, sleepy, tired, and fell asleep and allowed his vehicle to cross the center line of the highway. The contention is that defendant is not responsible for what he did while he was in that condition, and that he could not do an offense unless he acted knowingly and intelligently. This point is not well taken. Negligence is seldom, if ever, intentional. A similar question was argued in the case of *Richardson v. Commonwealth,* 192 Va. 55, 63 S. E. 2d 731, where Chief Justice Hudgins, speaking for the court, used this language:

"The number of deaths resulting from the operation of motor vehicles on the highways has increased to such an alarming extent that the legislature in a number of States have made a simple act of negligence which results in serious bodily injury, or death, a crime. Such statutes have been adopted in California, *People v. Warner,* 27 Cal. App. 2d 190, 80 P. 2d 737, Kansas, sec.

8-529, G. S. 1947 Sup., and Michigan [Comp. Laws of Michigan (1929) secs. 16743-16745]; *People v. Campbell,* 237 Mich. 424, 212 N. W. 97."

When our legislature laid down the rule stated in 8-537, above quoted, and made its violation a penalty, and created the offense of negligent homicide, it no longer left open to defendant as a defense that he negligently permitted himself to get on the other side of the road and cause the death of an approaching driver.

From what we have said it necessarily follows that the judgment of the trial court must be reversed with directions to overrule defendant's motion to quash the information and to proceed accordingly.

It is so ordered.

SMITH, J. (dissenting): I find myself unable to concur in the opinion of the majority. I shall briefly set down my views. I think the confusion arises from the failure of prosecutors and courts to realize that G. S. 1949, 21-420, deals with two separate fields of criminal law. *State v. Custer,* 129 Kan. 381, 282 Pac. 1071, states the abstract principles very well. The difficulty lies in applying them to the facts in each case. In the last paragraph of that opinion we said:

"The views which have been expressed will not require any change in the manner of pleading manslaughter. Paradoxical as it may seem, manslaughter committed by act, procurement or culpable negligence, which would be manslaughter at common law, is a statutory crime, and the information may charge killing by unlawful act, or by culpable negligence, stating the facts."

The section is quoted in the prevailing opinion, so it will not be set out here again. I shall attempt to analyze it, however. We find first "Every other killing of a human being, by the act, procurement or culpable negligence of another." A killing by an "act" is a killing that happens as the result of the defendant violating a statute enacted for the purpose of protecting life on the highways, something entirely apart from negligence. My position is fortified by the fact that the final phrase is "or culpable negligence." The violation of a statute enacted for the protection of life on the highways is one thing, driving a car in such a manner as to constitute culpable negligence is another. That is what we meant in *State v. Custer,* supra, syllabus 2, when we held:

"At common law, when death resulted from negligent conduct in doing a lawful act, it was necessary, in order to constitute manslaughter, that the conduct should be reckless."

One could be guilty of violating G. S. 1949, 8-537, and not have been negligent. G. S. 1949, 8-558d makes such a violation a misdemeanor.

In the first place, the information states that defendant drove his car "unlawfully and feloniously . . . with culpable negligence . . . in a careless and reckless manner and in such a manner as to indicate a wilful, wanton and negligent disregard of the safety of other persons on said highway." Following *State v. Custer,* supra, counsel for the state next states in the information the facts constituting the "culpable negligence" and "willful, wanton and negligent disregard of the safety of other persons on said highway" as "driving and continuing to drive" when he was and knew he was "fatigued, sleepy and tired" and while he was in that condition "fell asleep and allowed" his truck "to cross the center line" of the highway, contrary to G. S. 1949, 8-537, where it struck the car in which deceased was riding and as a result deceased was killed. In that opinion we held in syllabus 4:

"If death results from unlawful conduct amounting to misdemeanor denounced by statute for the purpose of protecting human life and safety, and the death would not have resulted except for the unlawful conduct, the killing would be manslaughter at common law."

Here comes into play G. S. 1949, 8-537, which provides that except for certain exceptions, not now important, an automobile must be driven on the right side of the highway. The information charges that defendant fell asleep and "allowed his vehicle to cross the center line of the highway" into the path of a car driven by deceased. Such language was intended by counsel for the state to be the facts constituting unlawful conduct amounting to misdemeanor denounced by statute for the purpose of protecting human life and safety.

It will be noted the information attempts to describe two different courses of conduct, one based on negligence and the other based on a violation of law. The trouble is that the culpable negligence pleaded is driving while defendant was, and knew he was, fatigued, sleepy and tired. I cannot bring myself to believe that the legislature ever intended such conduct to be of the sort denounced by the many authorities discussing culpable negligence, reviewed in *State v. Custer,* supra.

If the state intends to try defendant for a violation of G. S. 1949, 8-537, then the information attempts to charge defendant with conduct amounting to a misdemeanor while he was asleep. I agree

with the statement in the prevailing opinion that negligence is seldom, if ever, intended. I cannot agree, however, that intention is not a necessary ingredient of the violation of a statute such as G. S. 1949, 8-537.

It is true G. S. 1949, 8-531, provides:

"Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving. . . ."

I cannot agree that driving a car when one knows he is "fatigued, sleepy and tired" should, standing alone, be denominated driving a vehicle in such a manner as to indicate a willful or wanton disregard for the safety of others on the highway.

As to G. S. 1949, 8-529, that section refers to driving a vehicle in negligent disregard of the safety of others, and makes the killing of a person by such conduct negligent homicide. The conduct described in this information, that is, driving a car while defendant knew he was fatigued, sleepy and tired and then falling asleep and allowing the car to cross the center line of the highway is nothing more than mere negligence, or failure to exercise ordinary care. The use of the word "disregard" implies some mental attitude. One cannot read *State v. Custer*, supra, with the many authorities there cited, without coming to that conclusion.

I realize the force of G. S. 1949, 62-1011, that no information may be quashed for any surplusage or repugnant matter. What is the surplusage matter here? Some of the epithets could have been dispensed with. Suppose the information had charged that defendant with culpable negligence operated a vehicle on the highway in such a manner as to indicate negligent disregard of the safety of other persons on the highway. *State v. Custer*, supra, in the last paragraph says:

"The information may charge killing by unlawful act, or by culpable negligence, stating the facts."

Here the prosecutor stated the facts by alleging that the negligent disregard of the safety of others on the highway consisted of driving and continuing to drive when defendant was and knew that he was fatigued, sleepy and tired and while continuing to drive, in said condition fell asleep and allowed the vehicle to cross the center line of the highway.

I cannot bring myself to believe that the foregoing language is mere surplusage. It is language in the information advising the defendant on what the state expected to rely to establish his guilt.

Finally the prevailing opinion says:

"When our legislature laid down the rule stated in 8-537, above quoted, and made its violation a penalty, and created the offense of negligent homicide, it no longer left open to defendant as a defense that he negligently permitted himself to get on the other side of the road and cause the death of an approaching driver."

Applied to the facts in this case the above means if the state proves that defendant's car was across the center line of the highway, collided with the car in which deceased was riding and deceased was killed, the defendant is guilty, regardless of how defendant's car got over there. Here again I do not see how one could read *State v. Custer*, supra, and come to such a conclusion. After his learned and exhaustive discussion of the many authorities, the distinguished jurist, who wrote the opinion of the court in that case, said:

"Turning to the instructions given, and leaving out of consideration the tenth instruction, it is plain that what the lord chief justice of England warned against occurred in this case. Defendant was tried for culpable negligence, and not for manslaughter, and the theory was that if he was simply negligent he would be guilty. To approve the theory would be to strike from the statute the words 'which would be manslaughter at the common law,' and the statute may not be so emasculated.

. . . . . . . . . . . . . .

"The result was that defendant may have been convicted, without regard to the circumstances, other than cause of death, because he was driving at more than forty miles per hour. If he was thus violating the speed law, he was committing an unlawful act, made so by statute enacted for the express purpose of protecting life and limb; and if Wood's death would not have occurred except for the unlawful driving, defendant would be guilty of manslaughter at common law."

To paraphrase in this case under the prevailing opinion, the defendant may be convicted if his car was across the center line without regard to how it got there. I do not believe the legislature ever intended such a result. Certainly it may not be found in *State v. Custer*, supra, or *State v. Spohr*, 171 Kan. 129, 230 P. 2d 1013.

For the above reasons, I dissent from the majority opinion.