No. 45,348

THE STATE OF KANSAS, *Appellee,* v. OLIN MILES, *Appellant.*

(457 P. 2d 166)

Opinion filed July 17, 1969.

*John C. Humpage,* argued the cause, and *William R. Stewart,* of Topeka, *Russell Cranmer,* of Wichita, and *John J. Manning,* of Kansas City, Missouri, were with him on the brief for the appellant.

*James Z. Hernandez,* Deputy County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal by the defendant, Olin Miles, from a conviction of negligent homicide.

The case arises out of an accident which occurred southwest of Wichita on state highway K-42, a two-lane paved road running in a southwesterly direction, when Mr. Miles, driving a 1967 Pontiac hardtop, attempted to pass a car ahead of him driven by Mr. Ronald Tharp. As Miles pulled abreast of the Tharp car he concluded he was too close to clear an oncoming automobile and he thereupon attempted to fall back of Tharp and return to his own, or right hand, side of the roadway. In the course of this maneuver the defendant's car went off the road onto the right-hand shoulder, spun out of control back across the left-hand lane and into the path of a car driven by William R. Berges. As a result of the ensuing collision, Mr. Berges' wife, Lynd O. Berges, was fatally injured.

A charge of fourth-degree manslaughter was filed against Mr. Miles. The case was tried to a jury which found the defendant guilty of negligent homicide. Following imposition of sentence the present appeal was filed.

For his points of error, the defendant alleges the trial court erred in overruling his motion for discharge made at the conclusion of the state's evidence and a similar motion after his own evidence was in, and in overruling his motion for new trial. All three points present essentially the same basic issue: Is the verdict sustained by substantial evidence?

Negligent homicide, a crime which this court has held to be a lesser offense of manslaughter in the fourth degree, (*State v. Gloyd,* 148 Kan. 706, 84 P. 2d 966; *State v. Phelps,* 151 Kan. 199, 97 P. 2d 1105; *State v. Goetz,* 171 Kan. 703, 237 P. 2d 246) is defined in K. S. A. 8-529 (*a*) in these words:

"When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

The essential nature of the offense proscribed by this statute, and the evils sought to be cured by its passage, are pointed out in *State v. Ashton,* 175 Kan. 164, 262 P. 2d 123, where this court said:

"It prohibits the negligent driving of a vehicle (*a*) when the negligence is such as to be in disregard of the safety of others and (*b*) when such conduct is the proximate cause of death which ensues within one year. It is clear the legislature did not attempt to specify in detail the innumerable and variable circumstances, conditions, acts and omissions from which death might result from vehicular traffic. It undertook to enact a statute sufficiently broad to encompass negligent acts and omissions of all kinds and character from which death ensued when committed in disregard of the safety of others. It is a police measure designed to protect the public from the constantly mounting death toll resulting from vehicular traffic. In order to prevent or decrease these direful results the law, of necessity, had to be broad and general in its reach. . . .

"Manifestly, no legislature could accurately anticipate every possible circumstance or contingency which might arise and legislate specfically concerning it. That would be true concerning speed and all other factors which might become involved in highly dissimilar situations. . . ." (pp. 170-172.)

A concise, yet enlightening, discussion of K. S. A. 8-529, and its background, is to be found in 1950 Judicial Council Bulletin 172, in an article entitled "Negligent Homicide" where the author, William B. McElhenny, after calling attention to decisions from other jurisdictions construing similar statutes, concludes that ordinary negligence on the part of a driver in the operation of his vehicle which proximately results in death to another person is comprehended within the terms of the statute. We are inclined to agree that such was the legislative intent when the statute was adopted.

In the instant case the state chose to base its charges of negligence against the defendant on the alleged violation of two statutes: (1) K. S. A. 8-540, which places limitations on the overtaking of vehicles on the left, and (2) K. S. A. 8-532, which imposes restrictions on speed.

As we view these two statutes, both were enacted for the purpose of protecting life, limb and safety. In this respect they stand on the same footing as K. S. A. 8-552 (*b*) requiring motorists, in designated situations, to yield the right of way to others. The violation of this part of the traffic code was held sufficient, in *State v. Scott*, 201 Kan. 134, 439 P. 2d 78, to support a conviction for fourth-degree manslaughter where death had resulted therefrom.

It logically follows that the violation of either 8-540 or 8-532, or a combination of both, would be sufficient to constitute the lesser offense of negligent homicide, provided death flows therefrom. In *State v. Champ*, 172 Kan. 737, 242 P. 2d 1070, we said the violation

of 1949 G. S. 8-537 (the progenitor of K. S. A. 8-537) requiring that a vehicle be driven on the right half of the roadway, with certain exceptions, would suffice to support a verdict either of fourth-degree manslaughter or of negligent homicide, depending on the evidence, should death proximately result from the violation. (See, also, *State v. Phelps*, supra; *State v. Yowell*, 184 Kan. 352, 336 P. 2d 841.)

But the defendant earnestly contends there was no evidence to establish a violation of either statute; that his speed was shown at all times to be less than the legal limit of 70 miles per hour on that section of K-42 where the collision took place, and that while he had indeed started to pass the Tharp car, the evidence was undisputed that he had terminated the pass prior to the collision. Hence, he argues, since the state's charges of negligence were based on the violation of either 8-540 or 8-532, and since there was no evidence that he had violated either statute, the conviction against him must fail.

We tend to agree that if the state's evidence had disclosed Mrs. Berges' death resulted from an act of negligence on the part of Mr. Miles other than the negligence specified in the information, the conviction could not be sustained. The rule is expressed in 41 Am. Jur. 2d, Indictments and Informations, § 261, p. 1039:

"It is the settled rule that the evidence in a criminal case must correspond with the allegations of the indictment which are essential and material to charge the offense. This rule is based upon the requirements that the accused shall be definitely informed as to the charges against him, and that he may be protected against another prosecution for the same offense. . . ."

See, also, *State v. Williams*, 196 Kan. 274, 411 P. 2d 591.

In the present case, however, we believe there was evidence from which the jury might reasonably infer that Mr. Miles had violated either one or both of the statutes on which the state relied. K. S. A. 8-532 (*a*) provides:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

This statute relates the speed of vehicles to the attending conditions, with especial emphasis placed on avoiding collisions with persons and vehicles on or entering the highway. The restriction thus placed upon speed is in addition to the general limitation of 70 miles per hour for passenger cars during the daytime.

The other statute embraced in the information, K. S. A. 8-540, places limitations on overtaking and passing vehicles from the rear. Subsection (*a*) thereof reads:

"No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction."

The central thrust of this statute, also, is the avoidance of injury or damage to other persons and vehicles using the highway with particular respect, so far as 8-540 (*a*) is concerned, to approaching traffic.

Construed together, these statutory provisions mean that the driver of a vehicle is not to drive on the left side of the road in passing a vehicle ahead of him unless the left side of the road is clear of oncoming traffic, and unless his speed will not endanger the safe operation of approaching vehicles. We believe the facts and circumstances shown by the evidence in this case were such that we cannot say as a matter of law that the defendant, in attempting to pass Tharp, did not negligently disregard the safety of others.

In *State v. Ashton,* supra, this court, considering the connotation of the term "negligent disregard," spoke in these words:

"Surely we need not debate whether the term 'negligent' has a well defined meaning in legal parlance or in the mind of the average citizen. It is equally true the word 'disregard' has no hidden meaning. In *Forsyth v. Church,* 141 Kan. 687, 42 P. 2d 975, we approved the following definition of the word:

" 'In Webster's New International Dictionary, the word "disregard" is defined as follows: "Not to regard; to pay no heed to; to fail to notice or observe; hence to slight as unworthy of regard or notice, as to disregard the admonition of conscience." ' (p. 689.)

"The same definition was adopted in *State v. Harold,* 74 Ariz. 210, 219, 246 P. 2d 178, involving a similar highway statute." (p. 171.)

An extended discussion of the general topic is found in *State of Oregon v. Wojahn,* 204 Or. 84, 282 P. 2d 675, where the court sets out the statute of that state defining negligence:

" 'As used in the statutes relating to crimes and criminal pocedure, unless the context requires otherwise:

. . . . . . . . . . . . . . .

" '(2) "Neglect," "negligence," "negligent" and "negligently" import a want of such attention to the nature or probable consequences of the act or omission

referred to as a prudent man ordinarily bestows in acting in his own concerns.' " (pp. 86, 87.)

As we view the state's evidence it is reasonably susceptible to the inference that the defendant's course of action in attempting to pass Tharp was, under the circumstances, in negligent disregard of potential consequences.

The argument is advanced that Miles had terminated his pass and had returned to his own side of the road prior to the accident, and thus was not violating 8-540 (a). We are not impressed with this argument. Although Mr. Miles had steered his Pontiac to the right side of the road, and even upon the right-hand shoulder, he had not safely terminated his pass, for his vehicle spun out of control into the opposite lane of traffic. We think the fair import of that portion of 8-540 (a) which requires the overtaking vehicle to return to the right-hand side of the road before coming within 100 feet of an approaching vehicle is that the return be accomplished with safety, and without hazard to the occupants of oncoming cars.

The defense offered at the trial was built around the theory that the brakes on the Miles car suddenly, and with no prior warning, failed to respond, spinning his car across the road, and into the path of the Berges automobile. We would be less than frank were we not to concede that this defense was supported by a considerable body of evidence from sources which appear credible.

Yet there was evidence which tended to challenge that hypothesis, and the jury obviously refused to accept the defendant's version. One of the officers called to the scene of the tragedy testified he examined the brakes on the Miles car during his investigation; that he always noted defects in his report where any were found but had noted no brake defects in his report of this case; that he would have noted the brakes had they been a contributing factor or cause of the accident.

Mr. Tharp testified that when Mr. Miles started to pass him, the approaching Berges car was 300 or 400 yards away; that he thought it would be a tight squeeze and took his foot off the accelerator to give the defendant more time to complete the pass; that he accelerated his speed when he saw Miles change his mind and begin to fall back; and that the Berges car was only 150 to 175 feet distant at the time Miles pulled back of his (Tharp's) car.

Testimony by Mr. Adams, who was driving behind Miles when the latter pulled out to pass Tharp, was that he thought Miles was

crazy—he didn't think Miles could make it. This view was echoed by Sam Jones, who was driving behind Mr. Berges and had been looking for an opportunity to pass Berges. Mr. Jones testified that he felt, just prior to the accident, that Tharp's approaching car was too close for him to attempt to pass the Berges vehicle.

Further testimony by Mr. Adams was that the right *front* wheel on Miles' car was smoking or locked; that it was locked either because of faulty braking or slamming of the brakes. (The defendant's expert testimony as to defective brakes centered primarily on the right *rear* wheel.) When Miles attempted to pull back on the traveled portion of the road, after the right wheels of his car went onto the dirt shoulder, or into the ditch, Mr. Adams testified the right rear tire caught the edge of the pavement again and stopped the wheel from sliding, and the forward motion of the Miles car carried it into the opposite lane.

After assessing the evidence just related, we are in no position to say that evidence was entirely lacking to support the jury's finding of guilt. The function of this court on appeal, as we have often said, is simply to determine whether there is substantial competent evidence to support the judgment. *State v. Stein,* 203 Kan. 638, 456 P. 2d 1.) We do not weigh the evidence nor do we compare its relative worth. The jury is to determine the weight and value of the relevant evidence (*State v. Shaw,* 195 Kan. 677, 408 P. 2d 650) and this court will not substitute its evaluation of the evidence for that of the jury. (*State v. Phillips,* 197 Kan. 70, 415 P. 2d 421.)

We perceive no error in the trial court's action in overruling the defendant's motions for discharge or his motion for a new trial. Accordingly, the judgment is affirmed.