No. 44,220

STATE OF KANSAS, *Appellee*, v. JOHN J. WILLIAMS, *Appellant*.

(411 P. 2d 591)

Opinion filed March 5, 1966.

*Frank G. Theis*, of Arkansas City, argued the cause, and *Lawrence J. Wetzel*, of Wichita, was with him on the brief for the appellant.

*Mike Smith*, County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Tom Pringle*, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action wherein the appellant was convicted on thirteen counts of embezzlement.

The question upon which disposition of this case depends is whether the evidence adduced by the state is sufficient to sustain the appellant's conviction upon the charges filed in the information.

John J. Williams (defendant-appellant) was charged in an information with twenty-five counts of embezzlement involving funds totaling $50,500. The first twelve counts charged him with embezzlement alleged to have been concealed and not discovered until on or about the 24th day of August, 1964. Inasmuch as Williams was acquitted of these counts further discussion of them is immaterial.

Counts 13 through 25 are charged in identical language, except as to dates and the amounts of money involved. Count 13 of the information reads as follows:

"Tom Pringle, Deputy County Attorney, being duly sworn, on oath, says, that on or about the 11th day of October, 1962, in the County of Cowley, and State of Kansas, John J. Williams did then and there, unlawfully, feloniously, *being the duly appointed, qualified and acting receiver of the money, property, funds and assets of Charles A. Bliss, by virtue of his appointment as said receiver* by the District Court of Cowley County, Kansas, in Case No. 31348, without assent or authorization of said District Court, did then embezzle,

convert to his own use, take, make away with and secrete with intent to convert to his own use the sum of $1,000.00 lawful money of the United States *then and there being the money, funds, assets and property of Charles A. Bliss in the possession, custody and care of the said John J. Williams as said receiver for said Charles A. Bliss.*

"Contrary to G. S. Kansas, 1949, 21-545." (Emphasis added.)

To each of the twenty-five counts contained in the information, Williams entered his plea of not guilty.

The case was tried to a jury which acquitted Williams on the first twelve counts and found him guilty on the last thirteen counts. He was sentenced to three consecutive five-year terms in the penitentiary, a total of fifteen years.

Among the orders from which appeal has been perfected were the order of the trial court overruling Williams' demurrer to the plaintiff's evidence, motion for directed verdict and dismissal of the cause; and the order overruling Williams' motion for a directed verdict of acquittal and dismissal of the cause at the close of all the evidence.

The foregoing rulings are specified as error on the ground that the trial court ignored the plain language of Counts 13 through 25 of the information in that the state's evidence, and all of the evidence in the case, proved that there was no taking, conversion or embezzlement of the money or assets of Charles A. Bliss as an individual by Williams as receiver. It is contended by counsel for the appellant that the evidence discloses the money taken by Williams belonged to the C. A. Bliss Investment Company, a partnership, in which Williams was one of the partners, and as such it was not the money of Charles A. Bliss under the law of this state.

The evidence material to a determination of the foregoing point is undisputed and on the record here presented raises a question of law.

Williams was a public accountant with wide experience in municipal and private accounting, and in tax work before state and national agencies. He was married and his wife, Charlotte, assisted him in his accounting office.

During the year 1954 Williams became acquainted with Charles A. Bliss, who became his client. Bliss was then retired from active business and devoted his time to the investment of his assets for the production of income. When Williams first acquired Bliss as a tax client, Bliss was engaged in a partnership with William Myers in the construction of new housing. This partnership was dissolved at the end of 1956.

Bliss was married to a woman considerably younger than himself, and they had a teen-age adopted daughter, Sharla Ann, who was subsequently married.

In December, 1956, Bliss entered into an oral partnership with Williams as his partner under the name of C. A. Bliss Investment Company. This partnership venture was engaged in the loan business. Bliss initially was to furnish the money for the partnership business, while Williams was to furnish his office, office equipment, secretarial and accounting employees of his private accounting office, and his accounting and financial skills in the placement, processing and management of money loans. Both Bliss and Williams operated in a managerial capacity.

On the 24th day of March, 1958, the oral partnership arrangement was reduced to a formal written partnership agreement. Under the partnership agreement provision was made that the funds employed in the partnership venture were the joint tenancy property of C. A. Bliss and Sharla Ann Bliss (his daughter), and in the event of Bliss' death or disability during the partnership term, the partnership agreement was to continue and be binding on Sharla Ann Bliss as his successor in interest, and upon the heirs, personal representatives and assigns of the parties. The partnership agreement also provided that Bliss was to provide all capital invested and have the sole and exclusive right to determine what investments, if any, he wished to purchase or make.

On much of the partnership loan business the profit and loss sharing terms were on a fifty-fifty basis, other than the Lunger contracts, which consisted of handling furniture loans for Lunger Furniture Company of Augusta, Kansas, for which a separate profit sharing arrangement was made. The agreement provided that "When loans are made by Bliss other than on the Lunger account a memorandum shall be made and signed by the partners specifying the agreed division of interest and profit on each such loan." Williams testified the written agreement was later changed and modified by oral agreement of the two partners.

While the partnership initially was operated out of Williams' accounting office in the Home National Bank Building in Arkansas City, in 1958 the partnership on the advice of its attorney established a formal office and situs at Newkirk, Oklahoma, to avoid compliance with the Kansas Consumer's Loan Act. Loan checks were issued on the Eastman National Bank at Newkirk, Oklahoma,

federal income tax returns were filed in Oklahoma City, and Oklahoma state income tax returns were made. Partnership accounts were maintained in the Eastman National Bank at Newkirk, Oklahoma, and in the Union State Bank at Arkansas City, Kansas.

Williams testified that he had, while a partner, on several occasions in the past borrowed money from Bliss or the C. A. Bliss Investment Company. Williams testified that Bliss wanted to keep the partnership capital working and had a phobia about having more than $10,000 in any account in a bank, since that was the federally insured loan limit. On several occasions, all prior to the receivership, Williams and Bliss discussed the terms and arrangements for Williams to borrow money from the partnership. Williams testified that Bliss asked him to borrow money from the partnership funds rather than from a bank, even offering the money interest free. He further testified that early in the morning of June 15, 1960, Bliss and he had a specific conversation relative to Williams borrowing money from the C. A. Bliss Investment Company. Under the terms of the oral conversation, Williams and Bliss agreed that if Williams needed to borrow money at any time, he would borrow it from the partnership, C. A. Bliss Investment Company, on promissory notes due December 31, 1968, bearing 8% interest, such interest to be divided fifty-fifty to each partner. Williams, as borrower, was to have the right to repay such notes in advance if he so desired, and was to keep enough life insurance on his life to cover amounts borrowed in case of his death.

On the 1st day of August, 1960, Pearl Bliss, the wife of C. A. Bliss, sued him for divorce.

On the 3rd day of August, 1960, a restraining order was issued naming the banks heretofore mentioned, C. A. Bliss, John J. Williams, and the C. A. Bliss Investment Company, among others, defendants. This order was modified on the 4th day of August, 1960. The effect of the modification was to release the accounts of the C. A. Bliss Investment Company of Newkirk, Oklahoma, in the Union State Bank of Arkansas City, Kansas, and in the Eastman National Bank of Newkirk, Oklahoma, "so as to permit deposits and withdrawals from said accounts in the usual and ordinary and the normal operation of said investment business."

By reason of Bliss' activity in converting some of his personal corporate stock to cash, a receiver was appointed on the 14th day of March, 1961, in an effort on the part of counsel for Mrs. Bliss to

protect the Bliss property from conversion until the divorce action was decided. Pursuant to an agreement by counsel who represented both Mr. and Mrs. Bliss, together with Williams, Williams was appointed the receiver, to serve without fee. It was understood the receivership should not interfere with the operation of the partnership business of the C. A. Bliss Investment Company. Counsel for Mr. Bliss, Earle N. Wright, was to act (and did act) as the receiver's attorney.

The order appointing the receiver, omitting caption and signatures, reads:

"AND Now on this 14 day of March, 1961, the above entitled cause comes on for hearing on the application of the plaintiff for the appointment of a receiver. The plaintiff appearing in person and by her attorney, Norman M. Iverson of Arkansas City, Kansas, and the defendant, Charles A. Bliss appearing in person and by his attorney, Earle N. Wright of Arkansas City, Kansas. Thereupon, both parties announce they are ready for trial.

"THEREUPON, the plaintiff introduces evidence in support of her application for a receiver and the defendant introduces evidence in opposition thereto, and both parties rest, and the Court having heard, and considered said application, and the evidence introduced in support thereof and opposition thereto, and after due deliberation, and having been fully advised in the premises finds that the allegations in said application for the appointment of a receiver have been proved and are true, and that it is necessary that a receiver be appointed for all of the property, assets and estate of Charles A. Bliss.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that John J. Williams, a resident of Arkansas City, Kansas be and he is hereby appointed as *receiver of all of the property, assets and estate of Charles A. Bliss*, and that upon the filing and approval of his oath and bond in the amount of $50,000.00 that his appointment as said receiver shall become effective;

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said *receiver shall forthwith take possession and control of all of the records of Charles A. Bliss, C. A. Bliss Investment Company*, and all of the savings, checking and bank accounts, escrow accounts, time deposit accounts, accounts receivable, deeds, bonds, abstracts, safety deposit boxes, cashier's checks, notes, mortgages, certificates of stock, real estate notes and mortgages *and all other property, funds, assets and estate of Charles A. Bliss* of whatever kind or nature, or wheresoever situated, and within 60 days hereafter file with this Court a true and complete inventory and appraisal of all of the property, funds, assets and estate of Charles A. Bliss, and

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said *Receiver shall continue to operate and carry on the usual operation of the business of the C. A. Bliss Investment Company* and Charles A. Bliss, individually, and said Receiver shall make and file in this Court a complete report of all receipts and disbursements each six months and to do and perform such other acts and deeds as this Court may from time to time order.

"IT IS FURTHER ORDERED that said Receiver each month hereafter pay the

sum of $200.00 per month to Sharla A. Bliss, the daughter, of said parties, for school and education expenses, and said receiver shall further pay the sum of $400.00 per month to Pearl P. Bliss for her temporary support and maintenance and the sum of $400.00 per month to Charles A. Bliss for his temporary support and maintenance and Charles A. Bliss may use, spend or invest the allowance as he may wish and said Receiver shall have no responsibility or control over the use or disposition of this particular allowance or any Social Security payments to Charles A. Bliss and in addition thereto, said Receiver shall pay all taxes and necessary expenses in connection with the operation of the C. A. Bliss Investment Co. and the management and safe guarding of said property, funds, assets and estate of Charles A. Bliss." (Emphasis added.)

Pursuant to the foregoing order Williams qualified as receiver, but the records disclose that Williams never received any instructions from the court or the attorneys involved concerning his duties as receiver.

By the written partnership agreement Williams was not authorized to sign checks on the C. A. Bliss Investment Company partnership account, except when Bliss was not available Williams was authorized to write a check to Lunger for the purchase of a Lunger contract. The order of March 14, 1961, appointing Williams as receiver, however, when served upon the banks carrying the partnership accounts, authorized Williams' signature for the withdrawal of funds from the C. A. Bliss Investment Company.

On the day the receivership was instituted, Williams made the first withdrawal *of partnership funds* by a check in the sum of $1,000. Again on May 1, 1961, Williams testified that he drew by check on his capital account for $500. On neither occasion did Williams make a note because, according to his testimony, he was withdrawing his rightful earnings and drawings from the partnership funds. Following these withdrawals, Williams made withdrawals *from partnership funds,* in the form of checks payable to himself, on twenty-three occasions as follows:

"$4,000.00 on May 3, 1961;
$3,000.00 on June 20, 1961;
$5,000.00 on July 12, 1961;
$4,000.00 on August 18, 1961;
$5,000.00 on October 5, 1961;
$2,500.00 on December 11, 1961;
$1,500.00 on March 2, 1962;
$2,000.00 on March 13, 1962;
$1,500.00 on May 4, 1962;
$2,500.00 on June 5, 1962;

$1,000.00 on October 11, 1962;
$1,500.00 on February 2, 1963;
$2,500.00 on June 18, 1963;
$1,500.00 on July 5, 1963;
$2,000.00 on July 31, 1963;
$2,500.00 on August 28, 1963;
$1,500.00 on October 8, 1963;
$1,000.00 on December 2, 1963;
$500.00 on January 7, 1964;
$1,000.00 on January 22, 1964;
$1,000.00 on February 14, 1964;
$1,000.00 on February 28, 1964; and
$2,500.00 on August 1, 1964."

The evidence discloses that all checks written through the withdrawals of October 11, 1962, were represented by promissory notes issued by Williams, payable to the C. A. Bliss Investment Company on December 31, 1968, at 8% interest to be split 4% to each partner. These notes were handed to Bliss personally by Williams. Williams' testimony was that all remaining withdrawals were made by check, and a promissory note of like terms was made on each transaction and put in the files of the company, after Bliss' illness which began in January, 1963.

Following the illness of Bliss in January, 1963, he was hospitalized until his death in May, 1964.

The demands of Earle N. Wright, as executor of the personal estate of C. A. Bliss, for a complete accounting, and Williams' response thereto, brought about Williams' arrest on August 31, 1964, on embezzlement charges.

On the 13th day of September, 1964, Williams' wife, Charlotte, committed suicide by taking poison.

Among the evidence upon which the state relies for a conviction is the testimony of John Stephenson, a certified public accountant of Winfield, Kansas. He was ordered by the district court of Cowley County, Kansas, to examine the records of the receivership beginning March, 1961, through September, 1964. He examined all of the documents which were turned over to him by court order, including bank statements, canceled checks, books of original entry, journals, ledgers, etc. These records were turned over to Stephenson by Earle Wright, an attorney in Arkansas City. The checks covering the various transactions in question were admitted into evidence upon Williams' stipulation that the name John J. Williams appearing at the signature line on the face of these checks, and

endorsed on the reverse side of each, was signed and endorsed by him. These checks were turned over to Mr. Stephenson by the chief of police of Arkansas City.

Mr. Stephenson testified:

". . . There were different bank accounts under Williams' supervision as Receiver and as partner.

"That there are no discrepancies in the account of John J. Williams, Receiver as distinguished from the account of the C. A. Bliss Investment Company, a partnership.

[It is admitted by counsel for the state that all of the checks admitted as exhibits were drawn on the C. A. Bliss Investment Company.]

"I found no discrepancies or irregularities in any account with exception of C. A. Bliss Investment Company. No place on any of the checks is there the word 'Receivers Account.'

"The C. A. Bliss Investment Company was a partnership consisting of John J. Williams and C. A. Bliss. I have in my hands the original of the partnership agreement.

"I was ordered by the District Court of Cowley County to examine the accounts of John J. Williams, Receiver and the accounts of the C. A. Bliss Investment Company."

On cross examination Mr. Stephenson testified:

"Originally, Mr. Wright turned the things over to me, then there were some things taken from me under Court authority which were later returned to me by the Chief of Police of Arkansas City. After I had finished my examination, nothing was taken from me other than that which you know was taken from me at the preliminary hearing which was returned to me. I was not finished with my examination at the time of the preliminary hearing.

"Let's assume then that the receivership action covers all of the assets of Charles A. Bliss. One of an individual's assets so far as I am concerned as an accountant, or among those assets, would be an equity in a partnership.

"On March 13, 1961, Charles A. Bliss had a tremendous equity in the C. A. Bliss Investment Company.

"Again I am inferring that it is my opinion that the equity of C. A. Bliss in the C. A. Bliss Investment Company is a part of the total receivership."

The Honorable Doyle E. White, District Judge, Nineteenth Judicial District, Cowley County, Kansas, presiding when Williams was appointed receiver, testified that he never at any time consented to the withdrawal of funds from the C. A. Bliss Investment Company for the personal use of Williams, and that he never at any time authorized Williams to sign checks on the C. A. Bliss Investment Company account to himself.

The state's evidence has thus established that the stewardship of Williams concerning the personal assets of Charles A. Bliss in the

receiver's account was perfect to the penny, whereas the partnership accounts reflected the withdrawal of assets by the transactions here in question. The record discloses that Williams as a receiver was most diligent in the personal estate of Charles A. Bliss in securing court orders for the disposition or expenditure of funds, while in the partnership business he operated, with and without Bliss, as though no receivership existed or supervision was required of his management of the business and assets of the C. A. Bliss Investment Company.

The foregoing account of the evidence, which includes both evidence of the state and evidence of the defense, will serve to acquaint the reader with the circumstances which led to the state's prosecution in this case, and to establish a basis for this court's disposition of the case. Whether Williams' testimony concerning the modification of the written partnership agreement, or whether his testimony concerning the oral agreement pursuant to which Williams was authorized to borrow money from the partnership (which was controverted by the state), was or was not given credence by the jury is immaterial to our decision.

Wholly aside from other questions that may be suggested by the foregoing account of the evidence, the vital issue is brought into focus by the following summary of the established facts. The appellant herein is charged as a receiver with embezzling money of Charles A. Bliss, while the state's proof shows that funds of a partnership business, the C. A. Bliss Investment Company, were applied by the appellant to his own use.

Preliminary to a discussion of the legal characteristics of partnership property in Kansas, the nature of the partnership business known as the C. A. Bliss Investment Company should be clarified.

The partnership agreement between Bliss and Williams discloses that one partner contributed capital, and the other an office, office equipment, secretarial and accounting employees, and his technical skills and services. Both operated in a managerial capacity. While these facts might suggest the existence of a limited partnership, both parties throughout the proceeding have conceded the existence of a partnership and treated it as a *general partnership*. This is fortified by the fact that limited partnerships in the United States have never been recognized by the common law. They are solely a creature of statute. (See, K. S. A. 56-101 to 56-121, inclusive; and the Oklahoma Uniform Limited Partnership Act, 54 O. S. 1961

§§ 141 to 171, inclusive.) Nowhere in the record is there any suggestion that the partnership herein was established in compliance with the statutes either of Oklahoma or Kansas.

For a discussion concerning the relationship of parties engaged in a partnership enterprise as distinguished from a joint venture see, *Grannell v. Wakefield,* 172 Kan. 685, 242 P. 2d 1075. It has been held that one partner may put up skill and service as against the money or property provided by the other. (*Moore v. Thompson,* 105 Kan. 492, 184 Pac. 980, and cases cited therein.)

Another preliminary matter will be disposed of by assuming, without deciding, for purposes of this appeal, that the receivership initiated by the district court's order of March 14, 1961, included the assets and the operation of the business of the C. A. Bliss Investment Company.

In an effort to uphold the conviction in this case the state argues in its brief that a large part of the assets, money and property of Charles A. Bliss was his tremendous equity in the C. A. Bliss Investment Company, and that the money and property of the C. A. Bliss Investment Company was a part of the receivership. Counsel for the state argue that by appointing a receiver the district court merely took this property out of the control of Bliss and Williams and placed it in the court's hands until it could be disposed of on questions growing out of the proceeding. (Citing, *Hershfield v. Claflin,* 25 Kan. 166; and *Anderson & Kerr Dr'l'g. Co. v. Bruhlmeyer,* 134 Tex. 574, 136 S. W. 2d 800, 127 A. L. R. 1217.)

Directing the court's attention to Count 13 of the information, the state argues "That appellant was the duly appointed, qualified and acting receiver of the money, property, funds and *assets* of Charles A. Bliss by virtue of his appointment as said receiver by the District Court of Cowley County, Kansas, in Case No. 31348."

We construe the foregoing argument to mean that the specified sum of money alleged to have been embezzled in Count 13, and in each of the succeeding counts, was an equity of Charles A. Bliss in the possession, custody and control of Williams as receiver for the C. A. Bliss Investment Company.

The crucial language of Count 13 charges Williams as receiver with embezzling "the sum of $1,000.00 lawful money of the United States then and there being the money, funds, assets and property of Charles A. Bliss." We construe this language to mean but one thing—that the $1,000 was the money of Charles A. Bliss.

Turning now to the legal characteristics of partnership property in Kansas, this court has held that while a partnership has no existence separate and apart from the members which compose it, it is nevertheless an entity as to all matters germane to its interests or affairs. It has its own capital, its own assets and liabilities. In other words, the partnership estate is separate and distinct from the individual estates of its members. (*Campbell v. Bohan*, 148 Kan. 205, 207, 80 P. 2d 1110, and cases cited therein.)

More recent cases emphasize that the interest of a partner in a partnership is not separable from the partnership until after dissolution and final accounting.

In *Williams v. Smith*, 178 Kan. 434, 289 P. 2d 1059, the law is stated in Syllabus ¶ 1 as follows:

"The rule is that where dissolution of a partnership has been accomplished or a dissolution and accounting is sought, all of the property of the partnership of whatever nature or kind, is to be included in the final accounting and settlement; assets and liabilities are to be considered, and the interest of each partner in the partnership property is his share of the surplus after the payment of all partnership debts and the settlement of all accounts between the partners."

Again, in *Gaynes v. Wallingford*, 185 Kan. 655, 347 P. 2d 458, it was held in Syllabus ¶ 3:

"The corpus of the assets is partnership property, and *neither partner separately has anything in that corpus;* the interest of each is only his share of what remains after the payment of all partnership debts and all accounts between the partners are settled." (Emphasis added.)

The trial court may have placed undue reliance on the early case of *Hershfield v. Claflin*, supra, (1877) which held it was proper for an execution creditor of a partner to levy upon the partnership property and sell the interest of the debtor partner in it. The court reasoned that the seizure and sale of partnership property, to the extent of the share of the debtor partner, dissolved the partnerhip to the extent sold and dissolved, or at least suspended the partnership, for the time necessary to make such sale. There, however, the partnership was not a trading partnership, and subsequent decisions, heretofore discussed and cited, have impliedly overruled that case.

There is a line of Kansas cases covering another, but similar, aspect of partnership assets which is material to our discussion herein. It has been held what is due a partnership by a debtor cannot be subjected to garnishment as a credit due one member

of the firm. In other words, in an action against one member of the firm, a debtor to the partnership cannot be made a garnishee. Such debtor owes nothing to any one member of the firm. (*Trickett v. Moore*, 34 Kan. 755, 10 Pac. 147.)

In *Bank v. Lemley*, 105 Kan. 15, 180 Pac. 238, it was said:

". . . But the money of a partnership cannot be garnisheed in a suit against one of the partners, for the sufficient reason that the money is not due to the defendant in the action, but to the firm. . . ." (p. 22.)

In the recent case of *Plains State Bank v. Ellis*, 175 Kan. 261, 263 P. 2d 254, it was said:

". . . the rule is that a creditor of an individual partner may not look to the partnership assets in satisfaction of his demand until the partnership estate is settled. . . ." (p. 268.)

The foregoing rules and much of the basic law of partnership in Kansas are reaffirmed in *Gaynes v. Wallingford*, supra.

It is elementary that an information under which a defendant is charged with a criminal offense must be legally sufficient, in that it must charge an offense under the statute with enough clarity and detail to inform the defendant of the criminal act with which he is charged. It is also elementary that the state has the burden of proving the offense charged.

Under the foregoing rules of law applicable to partnership assets, we hold as a matter of law that the state failed to prove the offenses charged in Counts 13 through 25, inclusive, of the information. Count 13 of the information charged Williams as receiver of the money, property, funds and assets of Charles A. Bliss with embezzling "the sum of $1,000.00 lawful money of the United States then and there being the money, funds, assets and property of Charles A. Bliss in the possession, custody and care of the said John J. Williams as said receiver for said Charles A. Bliss." Each of the succeeding counts used the same language.

It is fatal to the state's conviction to charge Williams with taking money of Charles A. Bliss, when the proof shows the funds taken were strictly from the bank accounts of the C. A. Bliss Investment Company, a partnership. The partnership was a distinct business entity, and the taking of partnership funds, which under the law and the facts in this case were not, and could not be, the property of Charles A. Bliss, was not an offense charged in the information.

There was never a dissolution of the partnership, nor a final accounting which would separate or disclose the individual interest

of C. A. Bliss in the partnership assets. The partnership business existed under the court's receivership as a business separate and apart from that portion of the assets in the case clearly identifiable as the property of C. A. Bliss, an individual, and of which Williams as receiver kept a correct account. Throughout the receivership the individual assets of C. A. Bliss retained their character and identity as such, and the partnership assets retained their character and identity as such.

It is unnecessary in this opinion to venture into what remedies may have been available to Mrs. Bliss in the divorce action.

Whether on the evidence in this case the appellant could properly have been charged as a receiver with embezzling funds of the partnership, of which he was a member, is a question which we leave open. Nothing expressed in this opinion should be construed as giving any indication one way or the other on this point. (But see, *State v. Peterson*, 232 La. 931, 95 So. 2d 608 [1957]; *Gary v. N. W. Mut. Aid Ass'n.*, 87 Iowa 25, 53 N. W. 1086 [1893]; *State v. Ossendorf*, 357 Mo. 366, 208 S. W. 2d 209 [1948]; and *In re Sanders*, 23 Ariz. 20, 201 Pac. 93, 17 A. L. R. 980 [1921].)

Based upon what has heretofore been said and held, it follows that the trial court erred in its order overruling Williams' demurrer to the state's evidence, motion for directed verdict and dismissal of the cause. It further erred in its order overruling Williams' motion for a directed verdict and acquittal and dismissal of the cause at the close of all the evidence.

By reason of the foregoing disposition of the case numerous trial errors urged by the appellant have become immaterial; and facts which the parties sought to establish by evidence, the admissibility of which is controverted on appeal, have become immaterial and have not been stated in the opinion.

The judgment of the lower court is reversed with directions to discharge the appellant.