No. 48,253

STATE OF KANSAS, *Appellee,* v. FRANK COBURN, *Appellant.*

(556 P. 2d 876)

Opinion filed November 6, 1976.

*Ted Hollembeak,* of Steerman, Greiner and Roach, Chartered, of Emporia, argued the cause and was on the brief for the appellant.

*Michael G. Patton,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Philip E. Winter,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Frank Coburn was convicted by a jury of two counts of official misconduct while sheriff of Lyon County ( K. S. A. 21-3902 [a] ). He was sentenced and now appeals.

Appellant Coburn served as sheriff of Lyon county from June, 1970, until he resigned March 15, 1973. On May 7, 1973, a grand jury returned an indictment charging him with four separate, unrelated counts of official misconduct. In a common trial he was convicted of two charges and acquitted of the remaining two.

Count one, of which appellant was convicted, charged that on or about September 1, 1971, he solicited James Torrence to sell marihuana and delivered to Torrence for sale, marihuana which he had in his custody as sheriff, with the intent of realizing personal gain.

Appellant's first point upon appeal is the trial court erroneously denied his motion to dismiss count one because the state failed to serve him with a bill of particulars as directed in a general discovery order made August 29, 1973. At the beginning of the trial, which commenced October 30, 1973, the state had not delivered the bill of particulars. Immediately after the jury was sworn appellant moved for dismissal because of this failure. The motion was overruled. After the state's first witness, James Torrence, had testified, a bill of particulars was supplied. Appellant again moved for dismissal, which was denied. In pertinent part the bill stated:

"5. In Count I witnesses for the State will be James Torrence, Lucille Prosper and J. Vernon Humphrey. The overt acts are alleged to have taken place on or about September 1, 1971, in the Courthouse at Emporia; September 3, 1971, on the Burlingame Road near Emporia; November 16, 1971, at Mr. Torrence's residence in Emporia."

James Torrence was the only prosecution witness who had any knowledge as to count one. He testified he had loaned appellant $50.00 which had not been repaid; that in September or October he went to appellant's office to clear up confusion regarding Torrence's son who had been arrested in Arkansas; there was marihuana in appellant's office as a result of a recent raid; appellant asked him if he could sell the marihuana; he replied he might if it was any good; appellant said he needed $200.00 to pay a grocer; Torrence said if he sold any marihuana he would give the money to appellant; he was going to make the sale to help appellant; Torrence told appellant he could get $80.00 per pound; about one week later appellant telephoned him and suggested a meeting place at night at a schoolhouse on Burlingame Road three or four miles outside Emporia; he drove to the meeting place, then got into appellant's car; they rode around and appellant gave him a one gallon coffee can full of marihuana; Torrence hid the marihuana until

he was to go to prison, then he called appellant that evening and asked him to pick it up; appellant came about 7:00 or 8:00 p. m. and took the marihuana.

The purpose of our proviso for a bill of particulars, K. S. A. 22-3201 (5), is twofold: (1) To insure the defendant's understanding of the crime for which he stands charged so that he may prepare a defense and (2) to enable him to avoid a second prosecution for the same crime (*State v. Frames,* 213 Kan. 113, 515 P. 2d 751). Here a bill of particulars might conceivably have been helpful in preparing a defense and the prosecution was dilatory in supplying it. No reason or excuse for the delay has been offered and none is apparent.

A bill of particulars is a form of discovery now permitted a defendant in a criminal case. Our general discovery statute, K. S. A. 22-3212, in part provides:

".  .  . If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, *grant a continuance,* or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances." (Emphasis added.)

In *State v. Jones,* 209 Kan. 526, 498 P. 2d 65, we dealt with the prosecution's failure to comply with a discovery order and held:

"A trial court is vested with wide discretion in dealing with the failure of a party to comply with a discovery and inspection order.

"In exercising its discretion as to whether sanctions should be applied for violation of a discovery and inspection order the trial court should take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances.

"In furtherance of just and expeditious determination of cases requests for continuance should be utilized where necessary if the party is surprised because of his adversary's failure to disclose in compliance with a discovery order." (Syl. para. 1, 2 & 3.)

The foregoing principles are applicable as well to failure of the prosecution to furnish a bill of particulars.

Here appellant testified in his own behalf. He stated he had used Torrence as an informant but never asked him to sell marihuana, had never delivered any marihuana to him or picked up any from him. He now argues the state's tardiness in supplying the bill of particulars was prejudicial to him in that he was sur-

prised by the testimony. After appellant was furnished the bill of particulars he made no objection to its sufficiency nor does he complain now upon that score in any vital way and, more importantly, he made no request for a continuance so as to meet the evidence presented against him. Instead, he was content to proceed with his defense.

In *Jones* we discussed various matters to be considered by a trial court in dealing with a failure to comply with a discovery order and stated that ". . . in furtherance of just and expeditious determination of cases . . . requests for continuance should be utilized where necessary if a party is surprised because of his adversary's failure to disclose in compliance with a discovery order. Such procedure will enable a court more validly to distinguish the good faith request for help from the development of a mere ploy to be used later upon appeal if needed." (p. 531.)

Although appellant asserts prejudice he does not really demonstrate it and none is apparent or seems likely, particularly in view of his failure to request a postponement or continuance to meet the situation. Under these circumstances we cannot declare abuse of discretion in the court's denial of appellant's motion to dismiss count one.

Appellant's next point on appeal, applicable to both counts upon which he was convicted, is that he should have had a mistrial declared because of jury harassment. The matter arose in this fashion. Following a noon recess during the trial a juror reported to the trial judge that he had received an anonymous telephone call during the recess in which the caller told him to "make sure that he did the right thing". The juror stated he didn't get any impression whether the caller was referring to a vote of guilty or one of not guilty. The juror also told the judge he had discussed the call with other jurors and one other juror stated she had received a phone call regarding the case—"supposedly from a friend". This is the whole story told by the record. Appellant moved for mistrial which was denied.

Appellant says he is not asserting juror misconduct but rather that the calls produced sufficient distraction to the jurors that the verdict should be set aside and new trial had.

Not every jury is to be disqualified because of some improper communication or contact made to a juror prior to or during trial. The granting of a mistrial or new trial because of such conduct is generally regarded as resting in the sound discretion of the trial

judge who is best able to assess the impact of any such approach upon the fairness of the trial (See Anno.: Juror—Communication with Outsider, 64 ALR 2d 162, 185-186). To warrant reversal of a judgment because of improper contact or communication between a juror and an outsider, there must be some showing or indication of injury, actual or potential, to the complaining party, or the act or conduct complained of must be such as to afford reasonable grounds to question the fairness of the trial or the integrity of the verdict, or as would tend to destroy or impair public confidence in trial by jury (*Id.*, pp. 165-166). The substance of the communication may be important. If the comment relates to the merits of the case, it will be more likely to be found prejudicial. However, if it relates to the case merely in a general or incidental manner it will more likely be found harmless (*Id.*, pp. 175-177).

In *Hanson v. Kendt*, 94 Kan. 310, 146 Pac. 1190, an appeal from an order denying a motion for new trial because certain remarks were made in the presence of one juror, this court held that it must be shown that remarks so made were such as would necessarily prejudice the party complaining, or it must be shown that prejudice did result therefrom, in order to warrant this court in directing new trial on that account (Syl. para. 6).

Here the phone call does not on its face appear to be such as to vitiate the verdict. It was promptly disclosed to the trial judge—a fact which reflects conscientious juror attitude toward recognized impropriety. Its recipient was unable to discern the verdict sought by its maker. There is nothing to indicate the call had any effect or even the likelihood of effect upon the verdicts rendered. The trial judge, who was close to the situation, assessed the contact as harmless and we cannot declare abuse of discretion in that ruling.

The other count of which appellant was convicted, count three, charged that on or about February 24, 1973, while acting as sheriff, he removed from the lawful custody of Lyon county and retained in his personal possession one U-Haul rental trailer, with intent to keep the same permanently for his own use. Appellant contends the evidence was insufficient to sustain the finding of guilt on this count.

The prosecution's evidence revealed the following. On October 13, 1972, a deputy sheriff of Lyon county brought in an abandoned U-Haul trailer which had been found near the Admire turnpike exchange. The trailer was stored in the Lyon county shop adjacent to

the courthouse. The director of the Lyon county noxious weed division, who used the shop for storing his materials, complained on several occasions to different officers in the sheriff's department about the trailer being in the shop and requested that it be removed. On February 24 ,1973 (the date of the alleged misconduct with respect to the trailer), the director helped appellant hitch the trailer to the latter's automobile. Appellant drove off with the trailer and parked it in the back yard of his residence next to the alley. Other items, a jeep and a pickup, had previously been similarly stored at appellant's home. Appellant had a building at his home large enough to conceal the trailer but it was left in plain view. The trailer had not been repainted or changed in any way and its wiring had not been repaired when it was removed from appellant's premises May 7, 1973, pursuant to a search warrant.

One Sunday night, some time *after* appellant resigned as sheriff, two Emporia police officers saw a U-Haul trailer in the alley behind a sporting goods store in Emporia as they were investigating a possible burglary. These officers testified the trailer was attached to appellant's maroon older model Buick and both appellant and the store owner were present. The owner of the store testified that on three occasions in 1973 he had rented a U-Haul trailer from a local dealer and used his 1965 maroon Dodge to pull it; to his knowledge no other U-Haul trailer was on his premises during the time in question.

Appellant's next door neighbor testified she saw the trailer in appellant's back yard and no place else; appellant's wife told her it was parked there until the owner could be found. Appellant testified that after several complaints about the trailer being in the county shop he moved it to the back yard of his residence; that he had a trailer of his own and he never used the U-Haul trailer for personal use.

K. S. A. 21-3902 (*a*), under which appellant was convicted, provides:

"Official misconduct is any of the following acts committed by a public officer or employee in his public capacity or under color of his office or employment:

"(*a*) Willfully and maliciously committing an act of oppression, partiality, misconduct or abuse of authority. . . ."

Thus as an essential element of the charge it was incumbent on the state to establish an act of misconduct while appellant was acting in his capacity as sheriff or under color of his office. This

act was alleged to have occurred February 24, 1973, the date appellant transported the trailer from the county shop to his back yard. It was further necessary to show the removal was done with intent to keep the trailer permanently for his own use. In its oral argument here the state specifically acknowledged it is relying on the taking which occurred February 24, 1973, while appellant was sheriff. It simply asserts there was a conflict of evidence; therefore, the verdict should be sustained.

It is true there was a conflict in the evidence as to whether it was appellant's automobile which was seen hooked to a U-Haul trailer one Sunday night behind the sporting goods shop. Accepting the state's version as to this, however, as we must, the fact remains, this act took place after appellant had resigned and was no longer sheriff. There simply is no evidence as to any bad intent on his part when he removed the trailer from the county shop to his home—the time when the crime allegedly occurred. The evidence is all to the contrary. If appellant had been charged with wrongful possession at the time he had the trailer in the alley, without regard to any official capacity, an entirely different situation would be presented. This evidence of the Sunday night episode is not sufficient to raise an inference appellant intended on February 24th to keep the trailer permanently for his own use and appellant's motion for dismissal as to this count should have been sustained. Accordingly, the conviction upon count three must be set aside.

The judgment and sentence as to count one is affirmed; that as to count three is reversed with directions that it be dismissed.

APPROVED BY THE COURT.