(663 P.2d 680)
No. 54,326

State of Kansas, *Appellee*, v. Rayford Reed, *Appellant*.

No. 54,469

State of Kansas, *Appellee*, v. Willie Floyd, *Appellant*.

Opinion filed June 2, 1983.

*David R. Heger*, of Paola, for appellants.

*David D. Belling*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before Parks, P.J., Abbott and Rees, JJ.

Parks, J.: Defendants Rayford Reed and Willie Floyd were convicted in separate trials of aiding and abetting aggravated burglary and attempted theft. Their cases have been consolidated on appeal.

On September 15, 1982, Rolland Gallagher returned to his residence for lunch. He found a camera case lying on the floor and the cabinet doors open. He then heard a noise coming from the family room and upon investigating, came face-to-face with a man later identified by Mr. Gallagher as Tommy Bouser. Bouser ran into a back bedroom and locked the door from the inside. Gallagher heard the men escaping through a sliding door in the bedroom, ran outside and saw Bouser and Rayford Reed running from the house. Gallagher returned to the house and found a pillow case in the bedroom containing cameras, jewelry, money and a few other items which he estimated to be valued at between twelve to fifteen hundred dollars.

Trooper Theis of the Kansas Highway Patrol was in the vicinity of the Gallagher residence at the time the burglary was reported and he observed two men sitting in a station wagon parked in a driveway near the Gallagher residence. One of the men, recognized by Theis as Reed, was breathing heavily. Both men were detained and when Gallagher arrived at Theis' loca-

tion, he identified Reed as one of the men he had seen in his house but stated that he had not seen the other man, Floyd. All three men, Reed, Floyd and Bouser (who was apprehended by other officers) were arrested and transported to the jail in Paola.

After plea bargaining, Bouser pled guilty to the charge of attempted felony theft, while the aggravated burglary charge was dismissed by the State in exchange for Bouser's testimony against the other two defendants. Because Reed and Floyd were tried separately, many of the questions on appeal concern only one or the other defendant while others are common to both. Therefore, the discussion of the multiple issues raised shall be subdivided for ease of exposition.

I. Common Issues

The informations charging Reed and Floyd with aiding and abetting aggravated burglary stated that they did "aid and abet entering into a building, to-wit: residence of Rolland Gallagher, Route 5, Paola, Kansas, occupied during the time of said entrance." The State concedes that no one was in the Gallagher house when Bouser and Reed first entered. Therefore, defendants contend that the house was not occupied at the time it was entered and that the crime described by the information was not shown.

Defendants' argument raises two related questions: first, does the crime of aggravated burglary require proof that the victim was present in the structure at the time it was entered and second, was the charge in this case sufficient?

The statutes defining burglary and aggravated burglary (K.S.A. 21-3715 and 21-3716) differ only in that proof of the latter offense requires that the place of the burglary be one "in which there is some human being." The purpose behind the aggravated burglary statute is to describe a more serious offense than simple burglary when there is the possibility of contact between the victim and the burglar and the accompanying potential for a crime against the person to occur. This danger is just as great regardless of when during the burglary the victim comes to be in the building. Moreover, it has been held that the burglar need not know that someone else is present in the structure entered nor must he intend to enter an occupied structure to be guilty of aggravated burglary. *State v. Price*, 215 Kan. 718, 721, 529 P.2d 85 (1974). Thus, neither the knowledge nor the conduct of the

burglar elevates his offense to aggravated burglary; rather, the severity of the crime depends upon the mere presence or absence of any human being in the same structure.

A number of other states' statutes define a degree of aggravated burglary as a burglary of an inhabited or occupied dwelling. In cases arising under these statutes, issues have often arisen concerning the necessity of proving the occupancy of the dwelling at the time of the unlawful entry. Annot., 20 A.L.R. 4th 349. Some states hold that a person need not be present in the dwelling for the crime of aggravated burglary of an occupied dwelling to occur while others require physical presence in addition to customary habitation. Compare *People v. Traylor*, 100 Mich. App. 248, 298 N.W.2d 719 (1980) with *Reeves v. State*, 245 Ala. 237, 16 So. 2d 699 (1944). By contrast, our statute makes no distinction based on the character of the premises and establishes no temporal requirements concerning the presence of the victim. Thus, the decisions of other states are of no precedential assistance.

The Judicial Council notes following PIK Crim. 2d 59.18 state, without citing any authority, that "[w]hen a person enters the premises after the burglary has commenced but before the defendant has left the premises, the offense constitutes aggravated burglary."

In addition, in *State v. Lora*, 213 Kan. 184, 187, 515 P.2d 1086 (1973), our Supreme Court announced the following dicta:

"Burglary is defined in K.S.A. 1972 Supp. 21-3715 and 21-3716. The latter statute relates to aggravated burglary which differs only in the added requirement that the place of the burglary be occupied by a human being *during the course of the burglary*." [Emphasis added.]

Subsequently, in the *Lora* opinion the Court specifically rejected defendant's argument that he could not be convicted of aggravated burglary because his victims were not present in their homes when he entered. The Court stated as follows:

"Defendant also contends it was error to convict him of aggravated burglary under Counts 1 (Young) and 6 (Abderholden) because there were no persons present in the house when he entered. The contention is without merit because he remained in wait until his victims returned and entered their homes. K.S.A. 1972 Supp. 21-3716 reads:

" 'Aggravated burglary is knowingly and without authority entering into or *remaining within any building*, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of

persons or property *in which there is some human being,* with intent to commit a felony or theft therein.' (Emphasis added.)

"Defendant overlooks the provision in this statute which in the alternative proscribes knowingly and without authority 'remaining within any building . . . in which there is some human being, with intent to commit a felony . . . .'" *Lora,* 213 Kan. at 195.

Thus, the Court appeared to rely upon the statutory phrase "remaining within" to conclude that aggravated burglary includes all burglaries during which a victim is in the burglarized structure, regardless of the timing of the victim's arrival. In this case, unlike *Lora,* the charging documents did not include the "remaining within" language and thus, defendants argue that *Lora* is not authority for validating the informations.

Despite *Lora's* apparent reliance on the "remaining within" clause, it is our conclusion that the rationale of the opinion need not confine its holding. Moreover, the "entering into" or "remaining within" language found in both the burglary and aggravated burglary statutes has been held to describe different factual situations concerning the conduct of the burglar. In *State v. Brown,* 6 Kan. App. 2d 556, Syl. ¶ 4, 630 P.2d 731 (1981), this Court stated:

"As used in K.S.A. 21-3716, the phrases 'entering into' and 'remaining within' refer to distinct factual situations. 'Entering into' refers to the situation where a defendant enters without authorization. The specific intent to commit a felony or theft must exist at the time of the unauthorized entry. 'Remaining within' refers to the situation where defendant's initial entry is authorized, but at some later time that person's presence becomes unauthorized."

Thus, *Brown* construes the troublesome language of the statute as relating to the timing of the burglar's formation of intent rather than that of the victim's presence. Since the burglars' entrance here was just as unauthorized as their act of remaining within the house, the timing of their evil intent was not at issue. Therefore, the absence of any reference to remaining within the residence was not only immaterial to a charge of aggravated burglary, it would have been inappropriate under the facts of this case.

In summary, we conclude that the crime of aggravated burglary occurs whenever a human being is present in the building during the course of the burglary. Therefore, we hold that an information charging that offense need not specify the point in time at which a victim was present so long as it is alleged that a

human being was present sometime during the course of the burglary. The language in the informations which attempts to tie the presence of the victim with the illegal entry is therefore not material to the definition of a violation of K.S.A. 21-3716 and its inclusion should not have misled defendants' preparation. *State v. Brooks*, 217 Kan. 485, 488, 536 P.2d 1365 (1975). Defendants' claim that there was a variance between the evidence and the information is without merit.

Defendants also contend that the information failed to sufficiently charge the crime of aiding and abetting attempted theft because it did not specify the victim or particulars of the alleged theft attempt. The elements of an attempt were set out in the information and the theft defined by reference to the statute. In addition, the bill of particulars and the other counts of the information served to inform the defendants of the charge.

Defendants' final complaint is that the trial court erred in not giving a complete instruction on the lesser included offense of burglary. In particular, they argue that the instructions failed to advise the jury in either trial that "[w]hen there is a reasonable doubt as to which of two or more degrees of an offense he is guilty, he may be convicted of the lowest degree only." K.S.A. 21-3109. However, no request was made for such an instruction at the trial of these cases. Since the instructions given were not clearly erroneous, defendants cannot predicate reversible error on a question which was not presented to the trial court. *State v. Trujillo*, 225 Kan. 320, 324, 590 P.2d 1027 (1979).

II. Issues Raised by Reed

Defendant Reed contends that it was clearly erroneous for the court to have failed to give an instruction advising the jury to receive the testimony of an accomplice with caution. Such an instruction was not requested at trial.

In *State v. Moore*, 229 Kan. 73, 80, 622 P.2d 631 (1981), our Supreme Court found that when a cautionary instruction is refused, the extent of corroboration for the accomplice testimony determines the extent of the prejudice, but it did not find that to fail to give such an instruction *sua sponte* would be reversible error. Even if Reed had requested the instructions, Bouser's testimony concerning Reed's involvement was substantially corroborated. Gallagher testified that he saw Reed in the house and running from the scene. Reed was found by the police in the

immediate vicinity just after the burglary breathing heavily as if he had just exercised strenuously. In sum, the testimony of Bouser was sufficiently corroborated to render the failure to give a cautionary instruction harmless error.

Reed next raises the issue of ineffective assistance of counsel. This issue was not raised at any time during the trial nor on the defendant's motion for a new trial. Since the point was not presented to or determined by the trial court, it is not properly before this court and will not be considered for the first time on appeal. *State v. Porter, Green & Smith,* 228 Kan. 345, 354, 615 P.2d 146 (1980).

III. Issues Raised by Floyd

Defendant Floyd maintains that because of the newspaper articles covering the case his right to a fair trial was prejudiced. Floyd's motion for a change in venue, which was concurred in by the prosecution, was refused by the trial court.

A change of venue in a criminal case lies within the sound discretion of the trial court. The burden of proof is cast upon defendant to show prejudice in the community which will prevent him from obtaining a fair and impartial trial. Media publicity alone has never established prejudice per se. Prejudice must be established not as a matter of speculation but as a demonstrable reality. *State v. May,* 227 Kan. 393, 394-95, 607 P.2d 72 (1980). There was no significant difficulty experienced in selecting a jury satisfactory to both parties and no other demonstration of prejudice was offered. We conclude that the trial court did not abuse its discretion in refusing a change in venue.

Following Floyd's trial, it was learned that during deliberation the jury asked the bailiff a question concerning the trial. The precise substance of the question is not known but the bailiff testified to the court that she told them that "if they would read their instructions, that it might tell them in there, and try to remember what he said in closing argument; but if they wanted to write it down, I would take it and find out for them." The bailiff did not inform the court during the jury deliberations that they had asked her a question. The trial judge in denying Floyd a new trial found that while the bailiff should have communicated to the court the question of the jury, the bailiff did not advise the jury of her beliefs or attempt to instruct them in the law.

The conduct of the bailiff clearly violated K.S.A. 22-3420 but

not all improper communication with a jury necessitates a new trial. *State v. Coburn,* 220 Kan. 743, 746-747, 556 P.2d 376 (1976), cites the following rules:

"Not every jury is to be disqualified because of some improper communication or contact made to a juror prior to or during trial. The granting of a mistrial or new trial because of such conduct is generally regarded as resting in the sound discretion of the trial judge who is best able to assess the impact of any such approach upon the fairness of the trial . . . . To warrant reversal of a judgment because of improper contact or communication between a juror and an outsider, there must be some showing or indication of injury, actual or potential, to the complaining party, or the act or conduct complained of must be such as to afford reasonable grounds to question the fairness of the trial or the integrity of the verdict, or as would tend to destroy or impair public confidence in trial by jury."

There is nothing to indicate the misconduct of the bailiff had any effect upon the verdict rendered in this case. Moreover, the effect of the trial judge's ruling, who was close to the situation, is that he assessed the contact as harmless and we cannot declare an abuse of discretion in that ruling. *State v. Coburn,* 220 Kan. at 747.

We have considered the other points raised by the defendants on appeal and find them to be without merit.

Affirmed.

REES, J.: Dissenting and concurring.

Despite different phraseology in the record on appeal and majority opinion, Floyd comes before us following his conviction of aggravated burglary (K.S.A. 21-3716) and attempted felony theft (K.S.A. 21-3301 and K.S.A. 21-3701[a]).

Floyd's aggravated burglary conviction is based upon the State's allegation and the jury's decision that he aided and abetted the commission of an aggravated burglary by Tommy Bouser. See K.S.A. 21-3205. It cannot stand. The evidence failed to prove Bouser committed aggravated burglary as charged.

Our statutory definitions of burglary and aggravated burglary are as follows:

"Burglary is knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein." K.S.A. 21-3715.

"Aggravated burglary is knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any

motor vehicle, aircraft, watercraft, railroad car or other *means* of conveyance of persons or property in which there is some human being, with intent to commit a felony or theft therein." K.S.A. 21-3716.

Observing the use of the disjunctive "or" in the statutes, they plainly say burglary (K.S.A. 21-3715) is

(1) knowingly and without authority *entering into a building* with intent to commit a felony or theft therein, *or*

(2) knowingly and without authority *remaining within a building* with intent to commit a felony or theft therein,

and aggravated burglary (K.S.A. 21-3716) is

(1) knowingly and without authority *entering into a building in which there is some human being,* with intent to commit a felony or theft therein, *or*

(2) knowingly and without authority *remaining within a building in which there is some human being,* with intent to commit a felony or theft therein.

The amended information upon which Floyd was tried charged that he "knowingly and without authority and with the intent to commit a theft . . . [did] aid and abet [the] *entering* into a building . . . occupied during time of said *entrance* . . . ." (Emphasis added.)

Without presently pertinent objection by the State, the trial judge proposed and gave the following instruction stating the charge against Floyd:

"[E]ach of the following claims must be proved:

"1. That the Defendant . . . intentionally aided or advised Tommy Bouser . . . to knowingly *enter* the residence . . .

"2. That [Tommy Bouser] did *enter* . . . without authority;

"3. That . . . Tommy Bouser . . . had the intent to commit a theft therein;

"4. That at the time there was a human being in the residence . . . ." (Emphasis added.)

Whether Bouser's nefarious conduct is within the proscriptions of our aggravated burglary statute is not the question before us. Floyd was tried on the State's accusation that Bouser was guilty of the above-mentioned first alternative in the aggravated burglary statute. There is no material factual dispute. The question for our resolution is whether Bouser entered into a building in which there was another person. In my view, he did not.

I read the majority opinion as acceptance of the State's argument that "entering into" is a term so elastic that in this case it

encompasses all the time from Bouser's crossing of the threshold of the residence's unlocked door to and through the return and presence of Gallagher some 45 minutes to an hour later. During this time, Bouser ransacked the house, bagged the loot and capped off his visit by helping himself to a pre-departure midday luncheon purloined from the Gallagher larder. I cannot agree with the adopted elasticity concept. Not only is there no authority to support it, but to follow that reasoning must lead to the result that the commission of a burglary, whether simple or aggravated, is not completed until the accused exits the premises. Surely this is not so. The statutes say "entering into . . . any building" not "entering into, staying in and exiting any building." They do not say "entering into *and* remaining within." Neither does the aggravated burglary statute say entering into or remaining within a building with intent to commit a felony or theft and in which there is some human being during the course of the foray.

Under our statutes the elements of burglary consist of knowingly and without authority entering into or remaining within a building with intent to commit a felony or theft. A breaking is not required. Burglary and aggravated burglary are distinguished by the presence or absence of some person in the building entered or within which the accused remained. K.S.A. 21-3715; K.S.A. 21-3716; and Judicial Council comment to K.S.A. 21-3716.

In discussing common law burglary, it has been said "burglary is committed when, after breaking, the defendant enters with the requisite intent. Since the intended felony need not be committed nor even attempted, the burglary is completed upon the defendant's entry. Therefore the burglary is *completed* at the precise point in time when it is *committed;* it is committed when any part of the defendant's person or an instrument being used for the purpose of committing the felony intended passes the line of the threshold." 3 Wharton's Criminal Law § 334, p. 205 (14th ed. 1980).

I cannot agree with the majority that the rationale of the opinion in *State v. Lora,* 213 Kan. 184, 515 P.2d 1086 (1973), need not confine its holding. What is said in an opinion or the syllabus thereof always is to be read and interpreted in the light of the facts and questions present in the case. *Ellis v. Union Pacific R. R. Co.,* 231 Kan. 182, 185, 643 P.2d 158 (1982); *Wenzel*

*Machinery Rental & Sales Co. v. Adkins,* 189 Kan. 435, 438-439, 370 P.2d 141 (1962); *Steck v. City of Wichita,* 182 Kan. 206, 209, 319 P.2d 852 (1958). Otherwise, language meaningful for one case may erroneously become dogma for other cases despite essential differences. *McKinney, Administrator v. Miller,* 204 Kan. 436, 437, 464 P.2d 276 (1970).

Our aggravated burglary statute does not require that the burglar know there is another person in the building (*State v. Price,* 215 Kan. 718, 721, 529 P.2d 85 [1974]), but it does establish temporal requirements concerning the other person's presence in the building. Assuming knowing conduct, absence of authority and the requisite intent, to be guilty of aggravated burglary the accused either must have entered a building in which there was another person or he must have remained within a building in which there was another person. The temporal requirement concerning the presence of the other person is precisely the link that elevates a burglary to an aggravated burglary.

Adapting to the language of the aggravated burglary statute the language of the amended information and the jury instruction, the charge alleged against Floyd and submitted to the jury was that Bouser entered a building in which there was some human being. Bouser did not. Floyd is not guilty of the charge.

To support a conviction, the information must be legally sufficient to charge a statutory offense and the State has the burden of proving the offense charged. *State v. Williams,* 196 Kan. 274, 285, 411 P.2d 591 (1966). A conviction upon a charge not made is denial of due process, *State v. Minor,* 197 Kan. 296, 298-299, 416 P.2d 724 (1966); due process requires the State to prove what it alleges, *Krathy v. State,* 406 So. 2d 53, 54 (Fla. Dist. Ct. App. 1981).

The *Williams* rule has been frequently acknowledged. *State v. Brooks,* 217 Kan. 485, 487-488, 536 P.2d 1365 (1975) ("salt of heroin" immaterial variance from "heroin"); *State v. Kearns,* 211 Kan. 158, 162, 505 P.2d 676, *cert. denied* 414 U.S. 841 (1973) ("Robert" Zimmerman immaterial variance from "Bob" Zimmerman); *State v. Miles,* 203 Kan. 707, 710, 457 P.2d 166 (1969) (evidence in negligent homicide case supported alleged rules of road violations causing accident); *State v. Johnson,* 189 Kan. 571, 573, 370 P.2d 107 (1962) ("Charles V. Rogers" immaterial

variance from "Charles U. Rogers"); *State v. Earley,* 119 Kan. 446, 447, 239 Pac. 981 (1925) ("Ray Barber" immaterial variance from "Roy Barber").

I find Floyd's appeal from his aggravated burglary conviction controlled by *Williams.* There it was held embezzlement offenses charged were not proved. 196 Kan. at 286. *Williams* is succinctly summarized by the following paragraph from the opinion:

"It is fatal to the state's conviction to charge Williams with taking money of Charles A. Bliss, when the proof shows the funds taken were strictly from the bank accounts of the C. A. Bliss Investment Company, a partnership. The partnership was a distinct business entity, and the taking of partnership funds, which under the law and the facts of this case were not, and could not be, the property of Charles A. Bliss, was not an offense charged in the information." 196 Kan. at 285.

It is fatal to the State's conviction of Floyd to have charged Bouser with entering a building in which there was another person when the proof shows there was not another person in the building when Bouser entered. Bouser's entry into a building in which there was no other person was not and could not be the offense charged in the information, that is, aggravated burglary. The trial court erred in denying Floyd's requested and timely motions for dismissal and acquittal.

The majority refers to *State v. Lora,* 213 Kan. 184, and its language that a burglar is guilty of aggravated burglary if there is another person present in the building during the course of the burglary. 213 Kan. at 187. *Lora* is distinguishable on its facts and issues. Lora was charged with entering and remaining. The relevant issue raised on appeal was whether *under the statute* (K.S.A. 21-3716) it is necessary to an aggravated burglary conviction that the other person was present in the building at the time of entry. Because of the alternative "remaining within" provision, that is not necessary. Furthermore, under the facts in *Lora,* the defendant, after unauthorized entry, had remained within a building in which there was another person while in one instance perpetrating rape and in the other instance attempting to perpetrate rape. On appeal, Lora did not raise as an issue a claim that there was a fatal variance between pleading and proof, that is, the claim that it was not proved Lora entered *and* remained as charged. 213 Kan. at 187, 191, 192. (Compare *State v. Brown,* 6 Kan. App. 2d 556, 560, 630 P.2d 731 [1981],

where the defendant was charged with entering and remaining with intent to commit theft and we held the State had the burden to prove at a minimum entry with intent to commit theft.)

While not evident in either the majority opinion or this opinion, I find it clear that neither the preliminary hearing nor the bill of particulars "cured" the variance I find in the charge and proof. The State makes absolutely no contention of a "cure." Its position is purely and simply that Bouser committed aggravated burglary as charged.

We are told Reed's conviction of aggravated burglary was on an information charge, evidence, jury instruction and jury decision identical to that in Floyd's trial. Accordingly, it is my opinion Reed's aggravated burglary conviction should be reversed for the same reason that renders Floyd's conviction erroneous.

Whether, under the evidence presented, Floyd or Reed could properly have been found guilty of aggravated burglary upon a charge Bouser "remained within" is a question on which I do not now venture an opinion. I take it this is also true for the majority.

I concur in the result reached by the majority on each of the other issues raised on appeal.